OPINION OF THE COURT
Alexander, J.
We again are confronted with questions concerning the liability of the manufacturer, distributor and owner of a swimming pool for injuries sustained by a plaintiff who executed a headfirst dive into the pool. The pool was four feet deep, and was designed, manufactured and marketed for installation above ground. However, it was installed with two feet of the pool sunken into the ground and a deck built partially around the pool which gave it the appearance of an in-ground pool.
On September 11, 1983, Vincent Amatulli, Jr., who was then 16 years old, sustained serious injuries when he executed a headfirst dive into this swimming pool which had been *530 installed at the home of Janet and Philip Susi. Vincent, who was a guest at a pool party held at the Susis’ contends that prior to diving into this pool, he was aware that the pool appeared shallow around its sides, but that the bottom of the pool seemed to slope downward toward the center such that he gauged the depth of the water toward the center where he aimed his dive to be about six feet. Consequently he executed his dive at a 45 degree angle so as to reach what appeared to be the deep part of the pool. He was wrong, the depth was only four feet and he struck his head on the bottom. Vincent testified at his deposition that he was an experienced swimmer and diver, having received advanced swimming and diving instructions. He had not used this pool previously but had swum in a similar four-foot pool at the Susis’ former residence.
This action was commenced by Vincent and his mother against the owners of the pool, Janet and Philip Susi, the pool manufacturer Seaspray Sharkline, Inc. (Seaspray), the retail-distributor of the pool, Brothers Three, Inc. (Brothers) and Delhi Construction Corporation, of which the Susis were principals, and which initially was believed to have installed the pool.[1] Various cross claims and counterclaims were asserted by and among the parties and Woodsman Construction Company and its principals, the actual installers of the pool, were joined as parties defendant.
 The Appellate Division, with one Justice dissenting, affirmed Supreme Court’s grant of summary judgment to Seaspray, dismissing the complaint and all cross claims against it. That court also affirmed the denial of the cross motions for summary judgment of the defendants Susi, Brothers and Woodsman. Plaintiffs appeal and the Susis, and Brothers cross-appeal, pursuant to leave granted by the Appellate Division, which has certified to us the question "[wjas * * * the decision and order of this court dated December 13, 1989, properly made?” We now affirm the Appellate Division order and answer thé certified question in the affirmative.
I
Both the Appellate Division and Supreme Court concluded that inasmuch as the pool, when manufactured and distributed by Seaspray, was safe for its intended use as an above- *531 ground recreational swimming pool, Seaspray could not be liable for the plaintiff's injuries under a theory of strict products liability.
Plaintiffs argue however that the pool was defectively designed in that an aqua-colored vinyl liner was used which deceptively created the impression of a greater depth to the water than actually existed. Additionally, they contend that Seaspray failed to adequately warn against the dangers of diving into the pool and failed to specifically instruct and warn against in-ground installation of the pool notwithstanding that Seaspray knew or should have known that it was common practice to install these above-ground pools in the ground.
Plaintiffs argue further that the Appellate Division erred in concluding that the in-ground installation of the pool was a material alteration that created a new potential danger within the meaning of Robinson v Reed-Prentice Div. (49 NY2d 471). They argue also that the Appellate Division erred in concluding that Seaspray had no duty to warn against diving because the danger of diving into a four-foot above-ground pool was open and obvious.
The Susis and Brothers contend on their cross appeals that the conduct of Vincent, an experienced swimmer and diver, in executing a headfirst dive into what he knew or should have known with the exercise of reasonable care was a shallow pool, constituted the sole proximate cause of his injuries. Thus, under Smith v Stark (67 NY2d 693) and Howard v Poseidon Pools (72 NY2d 972) their motion for summary judgment dismissing the complaint should have been granted. Additionally, they argue that summary judgment should have been denied to Seaspray because material issues of fact were raised as to the defective design of the pool’s filtration system and the aqua-colored vinyl liner, the adequacy of the warnings as to the dangers of diving into the shallow pool and whether installing two feet of the pool into the ground and building a partial deck around it constituted a material alteration of the pool and a proximate cause of Vincent’s injuries. Brothers also contend that their motion for summary judgment dismissing the complaint should have been granted, especially in view of the grant of Seaspray’s motion for summary judgment. For the reasons set forth below, these arguments are unavailing.
II
We note that this case comes to us on motions for summary *532 judgment, addressed to the complaint and cross claims, and thus the Court’s role is limited to issue finding, not issue resolving (see, CPLR 3212; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.01; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065; Zuckerman v City of New York, 49 NY2d 557).
Seaspray’s undisputed proof established that the pool in question was designed and sold to be used as an above-ground pool for recreational swimming and that detailed instructions as to its intended above-ground installation were provided. Clear and explicit warnings as to the shallowness of the pool and against diving and jumping into the pool were also provided. Contrary to Seaspray’s instructions, however, the pool was installed with two feet of its four-foot depth below ground level, and a deck built partially around it thus creating the impression that it was an in-ground pool, capable of being used in a manner and for a purpose different from that intended by the manufacturer. As the Appellate Division aptly observed, had the pool been properly installed as an above-ground pool, its depth would have been readily apparent and would itself have served as an evident warning against diving (156 AD2d 500, 501). Plaintiff’s expert himself opined that the in-ground installation of the pool helped to disguise and camouflage the actual depth of the water (156 AD2d, at 503).
A manufacturer who places into the stream of commerce a defective product which causes injury may be liable for such injury, (see, Codling v Paglia, 32 NY2d 330). A defect in a product may consist of a mistake in manufacturing, an improper design or the inadequacy or absence of warnings for the use of the product (see, Codling v Paglia, 32 NY2d 330, supra; Micallef v Miehle Co., 39 NY2d 376; Torrogrossa v Towmotor Co., 44 NY2d 709). For there to be a recovery for injuries or damages occasioned by a defective product, however, that defect must have been a substantial factor in bringing about the injury or damage and additionally, among other things, at the time of the occurrence, the product must have been used for the purpose and in the manner normally intended or in a manner reasonably foreseeable (Codling v Paglia, supra). It is well settled that a manufacturer, who has designed and produced a safe product, will not be liable for injuries resulting from substantial alterations or modifications of the product by a third party which render the product defective or otherwise unsafe (see, Robinson v Reed-Prentice Div., 49 NY2d 471, supra). Moreover, in such circumstances, *533 we have concluded that "[principles of foreseeability * * * are inapposite where a third party affirmatively abuses a product by consciously bypassing built-in safety features.” (Id., at 480.)
Installing the pool in the ground and surrounding it with a deck transformed its configuration in such manner as to obscure its four-foot depth, which would have been readily apparent as a warning against diving had the pool been installed above ground. Thus this transformation of the pool’s configuration created a new potential danger not attributable to the manufacturer or the pool’s design (see, Robinson v Reed-Prentice Div., 49 NY2d 471, 480-481, supra).
Plaintiffs argue, however, that Seaspray knew or should have known that pools of this type were commonly being installed in-ground. Therefore, there should have been explicit warnings against such foreseeable installation and more adequate warnings against diving affixed to the pool itself. Even accepting that argument, the contention that Seaspray knew or should have known of the alleged practice of installing these above-ground pools in-ground is based solely upon the unsupported conclusory allegations of plaintiff’s expert. There is no submission that Seaspray knew that any of its pools were being installed in-ground, nor was there submission of any evidence demonstrating the existence of such knowledge generally within the pool industry (see, People v Jones, 73 NY2d 427; Matter of Riehl v Town of Amherst, 308 NY 212, 216; cf., Kriz v Schum, 75 NY2d 25; Denkensohn v Davenport, 75 NY2d 25). Under familiar rules "one opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim * * * mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” (Zuckerman v City of New York, 49 NY2d 557, 562, supra). Inasmuch as we read plaintiff’s expert’s affidavit as containing only bare conclusory assertions in respect to industry-wide knowledge regarding in-ground installation of these above-ground pools, it was insufficient to raise a triable issue of fact, sufficient to defeat Seaspray’s motion for summary judgment.[2]
*534 Similarly, under the circumstances here presented, the allegations regarding the pool’s filtration system and the use of an aqua-colored vinyl lining in the pool fail to demonstrate a design defect sufficient to raise a triable issue of fact.
Accordingly, Seaspray’s motion for summary judgment was properly granted.
Ill
Turning next to the motions and cross motions of the Susis and Brothers, the submissions demonstrate, without contradiction, that the Susis had the pool installed, upon the advice of the distributor, Brothers, in a manner that concealed its true depth and gave it the appearance of being an in-ground pool. The Susis and Brothers argue, however, that Vincent’s act of diving into the pool which he knew to be shallow was the sole proximate cause of his injury and therefore his complaint must be dismissed as against them (see, Smith v Stark, 67 NY2d 693, supra; Boltax v Joy Day Camp, 67 NY2d 617; Howard v Poseidon Pools, 72 NY2d 972, supra). In the cited cases however, we were able to conclude as a matter of law, upon the uncontroverted facts established by the submissions of the parties that the conduct of the respective plaintiffs was the sole proximate cause of their injuries (Howard v Poseidon Pools, 72 NY2d 972, supra; Manning v Manning, 72 NY2d 972; Smith v Stark, 67 NY2d 693, supra) or was an unforeseeable superseding event, sufficient to break the causal chain and thus absolve the defendant of liability (see, Boltax v Joy Day Camp, 67 NY2d 617, supra; see also, Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315; Prosser and Keeton, Torts § 44 [5th ed]).
*535 By contrast, no such conclusion can be reached here. The Susis directed the in-ground installation of this above-ground pool upon the advice of Brothers and contrary to the explicit installation instructions of the manufacturer, Seaspray. Plaintiff contends that this installation contributed to the creation of the illusion that the pool was of a depth sufficient for diving; that although he was aware of shallowness around the edges of the pool, it appeared to be deep enough toward the center. Thus, he urges that it cannot be said as a matter of law, on this record, that " ' "only one [legal] conclusion may be drawn from the established facts” ’ ” (Kriz v Schum, 75 NY2d 25, 35, supra, citing Howard v Poseidon Pools, 72 NY2d 972, 974, supra; Derdiarian v Felix Contr. Corp., 51 NY2d 308, supra) or that his conduct in diving into this pool under the circumstances was "reckless conduct”, constituting an unforeseeable superseding event such as would absolve these defendants of liability (Boltax v Joy Day Camp, 67 NY2d 617, 620, supra). These factual issues raise questions for resolution by the jury and summary judgment was properly denied.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. Summary judgment was granted to Delhi by Supreme Court and no appeal was taken, thus Delhi is not before us.

. Although our dissenting-in-part colleague posits that the "expert’s assertion * * * is entitled to be treated * * * as sufficient, in itself, to raise a triable question of fact” (see, dissenting opn, at 540) the law is otherwise. "[W]here the expert states his conclusion unencumbered by any trace of *534 facts or data, his testimony should be given no probative force whatsoever * ** * [i]ndeed, no reason is apparent why his testimony should not simply be stricken.” (See, McLaughlin, 1971 Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR 4515, 1991 Supp Pamph, at 400, citing People v Samuels, 302 NY 163; see also, Sawyer v Dreis & Krump Mfg. Co., 67 NY2d 328, 335; Fallon v Hannay & Son, 153 AD2d 95, 101, 102; Mohan v Westchester County Med. Center, 145 AD2d 474.)
Thus, unlike the bare submissions here, and contrary to the assertions of the dissent (see, dissenting opn, at 539) the opinion in Denkensohn v Davenport (75 NY2d 25) was deemed "probative” inasmuch as the submissions demonstrated that diving from the top of a pool-slide was "predictable” in light of the extensive industry-wide advertisements encouraging such diving and the issuance of regulations by the Consumer Products Safety Council requiring that warnings against careless misuse of these slides be affixed thereto.