■ MICHELINEA FUSILLI, Plaintiff-Respondent, v CALDOR, INC., et al., Defendants-Appellants. [641 NYS2d 259] —Order, Supreme Court, Bronx County (Bernard Burstein, J.), entered December 7, 1994, which denied defendants' post-trial motion to dismiss the complaint for failure to establish a prima facie case at trial, affirmed, without costs.

Plaintiff sustained a fracture of the right ankle when she slipped while attempting to clean a wading pool. She testified that, after the pool was first used on June 30, 1991, she tried to empty the water by pressing down on the side wall, as illustrated in the instructions, leaving approximately one inch of standing water. Before its second use on July 2, plaintiff stepped into the pool to clean around the rim. She did not, however, think that it was necessary to clean the bottom because the water was clear, the bottom did not appear discolored, and there was no slime discernable on the towel she had used. She again tried to drain the pool with the same result that an inch of water remained, making the pool too heavy to lift to spill out the rest of the water. While she was cleaning

the pool before its third use on July 4, her right foot slipped on the bottom and she fell. Upon attempting to get up, she noticed that the bottom was slippery. She testified that, because this was her first pool, she was not aware how slick the surface of the liner could become because of the growth of algae. It is uncontested that the pool did not carry any warning concerning the danger of falls due to the slippery lining.

Plaintiff's expert witness stated that the material used in the lining is lacking in traction and that, when unchlorinated water is left in the sun, "algae will grow and will make the surface more slippery and dangerous." Therefore, the pool should have been equipped with a device, such as a plug, to drain it completely. In addition, the product should have carried a warning, such as those carried by other wading pools, that the water should be kept clean and fresh and that the pool should be emptied daily. Defendant's own witness conceded that leaving water in the pool for just a couple of days could cause the growth of microorganisms.

There was sufficient proof presented at trial that plaintiff had no actual knowledge of the danger of extreme slipperiness presented by the growth of algae, resulting from failure to completely empty and clean the pool after each use, and that such danger was neither open and obvious (*cf., Baptiste v Northfield Foundry & Mach. Co.*, 184 AD2d 841, 843-844) nor remote or unforeseeable. While the slipperiness of wet surfaces may be a matter of general knowledge, the record reflects that the specific danger posed by a slick pool liner, further aggravated by algae formation, was not known to plaintiff. The court properly exercised its discretion in admitting the testimony of plaintiff's expert that the danger of algae growth was "not within the range of ordinary training or intelligence" (*see, Dufel v Green*, 84 NY2d 795, 797-798), and defendants waived objection to such testimony by failing to raise it at trial (CPLR 4017; *Horton v Smith*, 51 NY2d 798, 799).

We have considered defendants' remaining contentions and find them to be without merit. Concur—Rosenberger, J. P., Ellerin and Rubin, JJ.

Kupferman and Tom, JJ., dissent in a memorandum by Tom, J., as follows: I respectfully dissent and vote to reverse the IAS Court and dismiss the complaint.

In May 1991, plaintiff purchased a children's wading pool from defendant Caldor, Inc., which product was manufactured and distributed by defendant Intex Recreation Corp. ("Intex"). The box in which the pool was packaged contained visual and written instructions, including photographs on the carton

depicting a woman setting up the pool and emptying the water.

The plaintiff, with the assistance of her son and daughter-in-law, set up the pool in plaintiff's backyard and filled it with water. After her grandson had finished playing in the pool, she followed the instructions and emptied the pool by placing her foot on the wall, thereby letting the water flow out. Once the flow stopped, approximately one and one-half inches of water remained, which could not be removed by pulling the wall further down, and could not be poured out because the pool was too heavy.

Two days later, plaintiff's grandson again wanted to use the pool, so plaintiff, having observed bugs floating in the residual water, entered the pool and scooped out the bugs with a cup. At the end of the day, plaintiff again emptied the pool by putting her foot on the wall, and, seeing no problem, left the remaining one inch of water in the pool.

Once more, two days later, plaintiff began to clean the pool with a container and a towel. Wearing the same canvas shoes, plaintiff stepped into the pool and proceeded to scoop the water but slipped, fell and broke her ankle. Plaintiff testified, as she had previously, that the pool's lining appeared blue.

At trial, plaintiff's expert, a certified safety professional, testified that the growth of algae posed a danger of slipperiness in sunfiltered pools not completely emptied and cleaned after each use. Plaintiff further maintained that defendants should have provided a warning stating that the pool should be completely emptied between uses. At the close of plaintiff's case, defendants moved for a directed verdict on the ground that plaintiff had not established a prima facie case of negligence. The court reserved decision.

After the close of defendants' case, the court charged the jury regarding the reasonableness standard for design defects and failure to warn theories. The jury subsequently rejected plaintiff's defect in design argument but returned a verdict in plaintiff's favor on the theory of failure to warn, and awarded plaintiff damages of $189,500. Defendant moved to set aside the verdict, which was denied by the trial court on the ground, *inter alia*, that the adequacy of a warning is normally a jury question.

In order to recover damages stemming from a product which is deemed defective because of the inadequacy or absence of warnings, the failure to warn must be shown to have been a substantial cause of the events which led to the injury (*see, Amatulli v Delhi Constr. Corp.*, 77 NY2d 525, 532; *Derdiarian*

*v Felix Contr. Corp.*, 51 NY2d 308, 315; *Billsborrow v Dow Chem.*, 177 AD2d 7, 16).

In the matter at bar, it is my view that the fact that the vinyl liner of the pool was wet, and therefore slippery, was a danger that was readily discernible through "plain common sense". As a result, the absence of a warning in the manner of "slippery when wet" could not have substantially, or proximately caused plaintiff's injuries (*Smith v Stark*, 67 NY2d 693, 694; *Kelly v Academy Broadway Corp.*, 206 AD2d 794, 795; *Baptiste v Northfield Foundry & Mach. Co.*, 184 AD2d 841, 843-844; *Petrie v Goodrich Co.*, 175 AD2d 669; Restatement [Second] of Torts § 388).

To the extent that the defendants' alleged failure to warn concerns the lack of warning with regard to the necessity to completely empty the pool between uses to thwart the growth of algae, thereby preventing the surface of the liner from becoming slippery, I find that plaintiff failed to establish a prima facie case. There is no evidence that algae had formed in the pool, that plaintiff slipped on that algae, or that the lack of such warning was a proximate cause of her injuries.

The majority maintains that plaintiff testified that she was unaware how slippery the surface of the pool liner could become due to the growth of algae. The plaintiff, however, makes no such testimony and repeatedly states, throughout direct and cross-examination: that the liner was wet and, therefore, slippery; that the liner was the original blue color with no slime or discernible film; and that she had no idea what caused her to slip, other than acknowledging that when you walk on something wet, "you could slip."

Accordingly, I vote to reverse the judgment of the trial court and dismiss the complaint due to plaintiff's failure to establish that defendant breached its duty to warn plaintiff and that that breach proximately caused plaintiff's injuries.