Kenneth R. BRUNO and Mary
Beth Bruno, Plaintiffs,

v.

TOYOTOMI U.S.A., INC. and Toyotomi,
Co., Ltd., Defendants.

No. 1:98–CV–1729.

United States District Court,
N.D. New York.

July 16, 2001.

Cozen and O'Connor, Michael J. Sommi, William E. Gericke, of counsel, New York City, for plaintiffs.

London, Fischer, LLP, James L. Fischer, Bernard London, Jr., of counsel, New York City, for defendants.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

Plaintiffs Kenneth Bruno ("Mr. Bruno") and his wife, Mary Beth Bruno ("plaintiffs") [1] brought this diversity action, claiming that the defendants Toyotomi U.S.A., Inc. and Toyotomi Co., Ltd. ("defendants" or "Toyotomi") are liable to them for property damage. The basis of the action is product liability. The defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56. Oral argument was heard on May 25, 2001 in Albany, New York. Decision was reserved.

### II. FACTS

Plaintiffs borrowed a kerosene heater manufactured by Toyotomi from a friend, Steven Murrin, sometime before November 18, 1995, and utilized the heater approximately half-a-dozen times without incident. On November 18, 1995, Mr. Bruno used the heater to supply heat to the interior of his garage while he and a friend, William Beach, worked on their snowmobiles which were being stored there. At some point during the afternoon, Mr. Bruno and Mr. Beach left the garage for a couple of hours, returning at approximately 1:30 p.m. Plaintiffs allege that the heater was turned off during this time, although the record is unclear with regard to this claim.

When Mr. Bruno and Mr. Beach returned to the garage, they refilled the heater with

1. Plaintiffs have been compensated by their insurer, Allstate Insurance Co. ("Allstate"). There-fore, Allstate is the real party in interest in this subrogation claim.

kerosene and resumed work on the snowmobiles. Roughly thirty to forty-five minutes later, Mr. Beach heard a popping noise and turned to see flames coming out of the heater. Mr. Beach immediately ran out of the garage to alert Mr. Bruno, who was in the backyard. Mr. Bruno attempted unsuccessfully to put out the fire with a small fire extinguisher before evacuating the area. Although fire departments from multiple areas responded to the scene, the fire completely destroyed plaintiffs' garage and severely damaged parts of plaintiffs' home and cars.

Following the fire, the scene was inspected by an Allstate representative as well as Rensselaer County's fire inspector. The Rensselaer County Sheriff's Department took samples of fuel from the kerosene heater and the fuel pump where plaintiffs obtained the fuel used to refill the heater on the day of the fire, and sent them to the New York State Police Headquarters Crime Laboratory to be tested. The Crime Laboratory determined that no accelerants were present.

Although the plaintiffs had no personal knowledge of the heater's prior history of use, they were entitled to rely on the testimony of the owner, Mr. Murrin, to show that the heater had never been altered, modified, or abused in any way. However, the fact that plaintiffs' garage contained a number of potentially flammable substances including gasoline, starter fluid, glue, solvents, and rags, is likewise not in dispute.

## III. DISCUSSION

### A. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Hawkins v. Steingut, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). The court's function "is not ... to weigh the evidence and determine the truth of the matter," Liberty Lobby, 477 U.S. at 249, 106 S.Ct. 2505, but "to determine whether there does indeed exist a genuine issue for trial." Id.

### B. Expert Testimony

### 1. Requirements

To recover damages from defendants, plaintiffs must prove that the kerosene heater manufactured by the defendants was defective and the proximate cause of the fire which destroyed their property. Amatulli v. Delhi Constr. Corp., 77 N.Y.2d 525, 532, 569 N.Y.S.2d 337, 571 N.E.2d 645, 648–49 (1991)(holding that to recover for damages caused by a defective product, the defect must have been a substantial factor in creating the damages). This requires the testimony of an expert. See Tiner v. Gen. Motors Corp., 909 F.Supp. 112, 117 (N.D.N.Y.1995)(holding that plaintiff was required to present expert testimony that seat belt was defective because "[c]ertain issues, because of their scientific or technical complexity, require the special expertise of an expert witness.")(quoting Food Pageant, Inc. v. Consol. Edison Co., 54 N.Y.2d 167, 173, 445 N.Y.S.2d 60, 429 N.E.2d 738, 740 (1981)).

When a defendant submits expert opinion evidence concluding that their product/actions could not have caused the plaintiff's damages, it is incumbent upon the plaintiff to "produce evidentiary proof ... sufficient to require a trial of material questions of fact on which [they] rest[ ] [their] claim." Amatulli,

77 N.Y.2d at 533, 569 N.Y.S.2d 337, 571 N.E.2d at 650 (quoting *Zuckerman v. City of New York,* 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 404 N.E.2d 718 (1980)); *Matos v. New York City Health & Hosp. Corp.,* 181 A.D.2d 505, 505, 581 N.Y.S.2d 31, 31 (1st Dep't 1992)(affirming grant of summary judgment to defendants based on experts' affidavits asserting that plaintiff's injuries "could not have been caused" by defendant's actions). As such, when a defendant moves for summary judgment based on expert opinion evidence, and plaintiffs fail to "substantiate [their] allegations" with expert proof, plaintiffs have not met the required standard of evidence for denial of summary judgment. *Tirella v. Am. Props. Team, Inc.,* 145 A.D.2d 724, 726, 535 N.Y.S.2d 252, 255 (3d Dep't 1988); *see also Schaefer v. Marchiano,* 193 A.D.2d 664, 664, 597 N.Y.S.2d 470, 471 (2d Dep't 1993)(holding that plaintiffs did not meet the standard of evidence required to rebut a motion for summary judgment because they did not produce an expert affidavit demonstrating a triable issue of fact); *Bingham v. Godfrey,* 114 A.D.2d 987, 988, 495 N.Y.S.2d 428, 429 (2d Dep't 1985)(reversing denial of defendant's motion for summary judgment where plaintiff failed to present expert affidavit rebutting the defendant's evidence).

### 2. *Defendants' Expert*

In the present case, defendants submitted the affidavit of Dr. Harold Smith,[2] who concluded that the kerosene heater "revealed no evidence whatsoever of a defect," and determined that it would be impossible for the kerosene heater to cause the fire if fueled with pure kerosene, (Smith Aff. ¶ 9), thus showing a prima facie entitlement to summary judgment. Therefore, to survive defendants' motion for summary judgment, plaintiffs must rebut defendants' expert allegations by submitting the report of a qualified expert ·in proper evidentiary form.

However, for reasons discussed below, plaintiffs have failed to do so.

### 3. *Federal Rules of Civil Procedure*

■ Federal Rule of Civil Procedure 26 enumerates the disclosure requirements for expert testimony. Under these requirements, each party must identify any person who may present expert evidence and submit a written report, prepared and signed by the witness, which contains, among other things, a complete statement of all opinions to be expressed, the basis and reasons supporting these opinions and the qualifications of the witness. Fed.R.Civ.P. 26. Plaintiffs assert that Allstate Claims Investigator Daniel Stauffer ("Stauffer") was identified as an expert witness when defendants were provided with a copy of his report. This assertion is incorrect. Plaintiffs never specifically identified Stauffer as an expert retained by them for purposes of this litigation, or provided any information concerning his qualifications, publications, or compensation, as required by Rule 26. Further, the purported "expert" report was prepared for, and submitted by Stauffer, to Allstate in his capacity as an insurance adjuster, and more than one year prior to the commencement of this litigation. Therefore, defendants could not have reasonably expected that Stauffer was retained as an expert by the plaintiffs.

Additionally, to be considered in opposition to a motion for summary judgment, evidence must meet the requirements set out in Rule 56, which stipulates that a document must be authenticated by affidavit. Fed.R.Civ.P. 56(e)(stating that sworn copies of all papers referred to must be submitted with an affidavit). Plaintiffs' purported "expert report," an unsigned, unsworn report, prepared by an individual who was not properly identified in compliance with Rule 26, and without any indication of "expert's" qualifications does not "constitute evidentiary proof ... sufficient to defeat [defendants'] motion[ ] for summary judgment." *Simms v. N. Shore*

---

2. Dr. Smith is qualified to be an expert witness. He holds a Ph.D. in Chemistry and Physics, and has more than thirty years of experience in research, product development, and hydrocarbon fuels technologies. Additionally, Dr. Smith has published ·and/or presented over one hundred technical papers and provided consultation and/or testimony regarding product defects, product instructions and safety warnings in more than one hundred litigation actions. (Def.'s Aff. in Supp. Summ. J. Ex. G.)

*Univ. Hosp.,* 192 A.D.2d 700, 701, 597 N.Y.S.2d 113, 113 (2d Dep't 1993); *see also Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 191(5th Cir.1991). Therefore, the plaintiffs have no expert, and the defendants' motion for summary judgment is in effect, unopposed.

### 4. *Qualifications of Plaintiffs' "Expert"*

■ Even assuming that plaintiffs' "expert" has been properly identified, Federal Rule of Evidence 702 provides that the "preliminary inquiry [in] determin[ing] whether to consider expert evidence is to determine whether the witness is qualified to render an expert opinion." Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the judge must also ensure that all expert testimony and evidence admitted into the record is reliable as well as relevant. 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This "gate-keeping function" has been interpreted to apply to testimony based on "technical" and/or other "specialized" knowledge, and therefore must be applied to plaintiffs' purported "expert" witness. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Although plaintiffs claim that Stauffer should be considered an expert witness, plaintiffs have made no showing that he is an expert in the area of kerosene heaters and fuel properties, or even remotely qualified to opine on the properties of kerosene as compared to other flammable materials. He is just an insurance adjuster. Additionally, he did not inspect the scene for more than a month after the fire, and incredibly, failed to interview Mr. Beach, who was the only person in the garage when the fire broke out. Because plaintiffs' "expert" does not have the necessary qualifications or a sufficient basis for his opinion, his testimony is inadmissible. As a result, the plaintiffs have failed to provide any evidence that the kerosene heater manufactured by Toyotomi was defective and caused the fire which damaged plaintiffs' property.

### C. *Alternative Claims*

Although both parties assert a number of additional claims in support of their respective positions,[3] these arguments need not be addressed in view of the above findings.

### IV. *CONCLUSION*

Because defendants made a prima facie showing that plaintiffs' damages were not caused by defendants' product, plaintiffs were required to rebut this showing with proper evidentiary proof in the form of expert testimony. Plaintiffs' reliance on an unqualified "expert" witness, and noncompliance with Federal Rules of Civil Procedure 26 and 56 renders plaintiffs' "expert" testimony inadmissible. Without this purported "expert" testimony, plaintiffs have failed to provide an adequate rebuttal to defendants' claim that the kerosene heater did not cause the fire. Therefore the defendants' motion must be granted.

Accordingly, it is

ORDERED, that

1. The motion by defendants Toyotomi, U.S.A., Inc. and Toyotomi, Co., Ltd. for summary judgment is GRANTED; and

2. The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

**3.** Plaintiffs assert that a jury should decide the question of causation, and defendants claim that plaintiffs: (1) failed to rule out possible alternative causes of the fire; (2) failed to prove that the kerosene heater was not altered during the five years the heater was owned by Murrin; and (3) cannot show that the kerosene heater failed to perform as intended.