OPINION OF THE COURT
Marcy S. Friedman, J.
In this product liability action, plaintiff Melissa Luftman alleged that a skirt that was sold by defendant retailers, Fashion 21, Inc. and Forever 21 Retail, Inc. (collectively Forever 21), and distributed by defendant The Original, Inc. was ignited by a cigarette, causing her to sustain second- and third-degree burns. The action was tried before a jury, which rendered a verdict on *276 December 16, 2009. The case was submitted on special interrogatories which put three theories of liability to the jury: strict liability, negligence, and breach of warranty. The jury found against plaintiff on the strict liability theory, answering “no” to the question for each defendant: Was defendant’s product “not reasonably safe in that it was defectively designed?” The jury also found against plaintiff on the breach of warranty theory, answering “no” to the question for each defendant: Did defendant “breach its warranty in that the product was not reasonably fit for its ordinary purpose?” The jury found in favor of plaintiff on the negligence theory, answering “yes” to the question for each defendant: Was defendant negligent? However, the jury found that defendants’ negligence was not a substantial factor in causing plaintiffs injury. Plaintiff now moves to set aside the verdict, on the ground that the verdict is internally inconsistent and against the weight of the evidence.
CPLR 4404 (a) provides that a court may set aside a verdict and order a new trial “where the verdict is contrary to the weight of the evidence, in the interest of justice or where the jury cannot agree after being kept together for as long as is deemed reasonable by the court.” It is well settled that the determination of whether a jury verdict is against the weight of the evidence involves “a discretionary balancing of many factors.” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Yalkut v City of New York, 162 AD2d 185, 188 [1st Dept 1990].) A verdict should not be set aside as against the weight of the evidence “unless the jury could not have reached its verdict on any fair interpretation of the evidence.” (McDermott v Coffee Beanery, Ltd., 9 AD3d 195, 206 [1st Dept 2004]; Sepulveda v Aviles, 308 AD2d 1 [1st Dept 2003]; Delgado v Board of Educ. of Union Free School Dist. No. 1 of Towns of Greenburgh & Mt. Pleasant, 65 AD2d 547 [2d Dept 1978], affd without op 48 NY2d 643 [1979].)
“The history of the fair interpretation standard indicates that it was intended to accentuate the principle that when a jury, upon being presented with sharply conflicting evidence creating a factual dispute, resolved the controversy in favor of the defendant upon a fair interpretation of the evidence, that finding should be sustained in the absence of some other reason for disturbing it in the interest of justice.” (Nicastro v Park, 113 AD2d 129, 134 [2d Dept 1985] [citation omitted].)
*277 This principle, in turn, rests on the recognition that the plaintiff, not the defendant, has the burden of proof on liability and damages. (See id.) In making the determination of whether a verdict is against the weight of the evidence, “the court must proceed with considerable caution, ‘for in the absence of indications that substantial justice has not been done, a successful litigant is entitled to the benefits of a favorable jury verdict.’ ” (McDermott, 9 AD3d at 206, quoting Nicastro, 113 AD2d at 133.)
Here, the court does not find that the verdict was internally inconsistent. In submitting the negligence theory to the jury, the court instructed the jury as follows: A retail seller or distributor who knows, or from facts known to it should realize, that a product, when put to its intended use, is or is likely to be dangerous if defectively made, and who has no reason to believe that the user of the product will discover such danger, is under a duty to use reasonable care to see that the product when delivered is safe for its intended use. That duty requires the seller to make such inspection and tests of the product as a reasonably prudent retail or wholesale seller of such products would make under the same circumstances and to correct any defects likely to make the product dangerous which the retail seller or distributor discovers or in the use of reasonable care should have discovered in the course of such inspections and tests. The jury could accordingly have found that defendants were negligent for failure to test the product but that the product was not defective.
While the verdict was therefore not inconsistent, the court finds that the verdict that the skirt was not defective could not have been reached on any fair interpretation of the evidence. Defendants’ expert, Dr. Carl Abraham, a professional engineer, testified that the event could not have occurred in the manner claimed by plaintiff. In particular, he assumed that plaintiff had sat on a cigarette, and testified that it would be impossible for a person to sit on a cigarette and have it ignite any part of a garment no matter how flammable it was. (Abraham videotape trial tr at 25.) He also testified that if the skirt made contact with a cigarette on the ground, it would probably burn and char but not ignite. (Id. at 34.) While acknowledging that there was a low probability that it could ignite, he stated that it would take 10 to 15 minutes to do so. (Id.) He further testified that the only time a material is dangerous is if it ignites in less than a second and people are engulfed in flame in a very short time. *278 However, he stated: “That didn’t happen here.” {Id. at 35-36.) When questioned about the basis for his opinion that the skirt did not become engulfed in flame in a very short time, he stated that the basis was plaintiffs and the witness’ statements; that plaintiff was able to take the skirt off; and that, if a large amount had burned, she would have had extensive burns but did not. (Id.)
These opinions were based wholly on speculation rather than on the facts in the record as to how the event occurred.[1] It is undisputed that the skirt in question was long. Plaintiff testified that she was sitting on a bench in a public plaza before the occurrence, and that after she felt hot air blowing through the skirt, she stood up and noticed a burning cigarette on the ground, which she believed had made contact with the skirt. Plaintiff and John Villa, a passerby who came to plaintiffs rescue and who was the sole disinterested witness at the trial, both testified that the skirt went up in flames within a matter of seconds. Plaintiff testified that she saw flames in two to three seconds after she felt the warmth, while Villa testified that smoke turned to flames within approximately 15 seconds. Villa testified that he pulled the skirt off plaintiff as the flames were starting to get tall. He also testified that about a third of the skirt was burning as of the time he pulled it off. Plaintiff also produced the uncontroverted testimony of Dr. Michael Fiorello, a plastic surgeon, that plaintiff sustained second- and third-degree burns over 6% of her body, and that she was hospitalized in the Cornell burn unit for nearly three weeks.[2]
It is well settled that expert opinion evidence “must be based on facts in the record or personally known to the witness. [The expert] cannot reach his conclusion by assuming material facts not supported by evidence.” (Cassano v Hagstrom, 5 NY2d 643, 646 [1959]; accord Roques v Noble, 73 AD3d 204 [1st Dept 2010].) Here, the only evidence in the record that the accident did not occur in the manner claimed by plaintiff, or that the skirt was not defective, was the testimony of Dr. Abraham. As this testimony was based on speculation rather than record evidence, it cannot support the verdict.
*279 In holding that the verdict is against the weight of the evidence, the court recognizes, as it has repeatedly in past opinions, that the court must accord great deference to a jury’s verdict, and “must cautiously balance . . . [such] deference . . . against the court’s own obligation to assure that the verdict is fair.” (McDermott, 9 AD3d at 206 [internal quotation marks and citation omitted]; Nicastro, 113 AD2d at 137.) The court further recognizes that “[p]articular deference is to be accorded a jury verdict in favor of a defendant in a tort action, especially if the resolution of the case turns on the evaluation of the conflicting testimony of expert witnesses.” (McDermott, 9 AD3d at 206-207 [citations omitted].)
This case, however, is not one in which resolution turns on conflicting testimony of expert witnesses. Rather, it is one in which the testimony of defendants’ expert, Dr. Abraham, should not have been submitted to the jury to be weighed against plaintiff’s expert’s testimony, because Dr. Abraham’s testimony, discussed above, was completely without basis in the factual record. (See e.g. Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002] [“Where the expert’s ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . the opinion should be given no probative force”]; Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533 n 2 [1991] [“(W)here the expert states his conclusion unencumbered by any trace of facts or data, his testimony should be given no probative force whatsoever . . . (i)ndeed, no reason is apparent why his testimony should not simply be stricken” (internal quotation marks and brackets omitted)].)[3]
Given the plausible, uncontradicted evidence from plaintiff and her eyewitness that the accident occurred in the manner plaintiff claimed, and not in the manner which formed the basis for Dr. Abraham’s opinion, substantial justice would not be done if the verdict were permitted to stand. Moreover, plaintiff introduced competent testimony from Dr. Rex Schad, a textile engineer, that the skirt was defective. As the record contained “abundant evidence,” or was “replete with evidence,” to establish plaintiffs strict liability cause of action, the court’s exercise of its discretion to set aside the verdict, as against the weight of *280 the evidence, is warranted. (See Yalkut, 62 AD2d at 188 [upholding exercise of discretion to set aside verdict where there was “abundant evidence” establishing defendants’ negligence]; Nicastro, 113 AD2d at 137 [upholding exercise of discretion to set aside verdict where “the record was so replete with evidence of negligence that the trial court did not abuse its discretion in setting aside the verdict”]; accord Tunnell v Metropolitan Suburban Bus Auth., 186 AD2d 643 [2d Dept 1992]; Robinson v City of New York, 300 AD2d 384, 385 [2d Dept 2002] [upholding denial of motion to set aside verdict where record “was not ‘replete with evidence of negligence’ ”].)
Finally, in holding that the verdict is against the weight of the evidence, the court rejects defendants’ apparent contention that the skirt was not defective because it met, or because plaintiff failed to prove that it did not meet, the flammability standard set forth in the Flammable Fabrics Act of 1953 (15 USC §§ 1191-1204; 16 CFR 1610.1 [d] [1] [formerly 16 CFR 1610.37 (d) (1)]). Dr. Abraham testified that the skirt met this standard. This testimony was also speculative, as Dr. Abraham tested an “exemplar” of the fabric of which the skirt was purportedly made. However, the actual fabric was not supplied by defendants for the test, and there was no evidence to show that the fabric of the skirt and the fabric of the exemplar were of the same weight — the critical factor under the Flammable Fabrics Act. (See 16 CFR 1610.1 [d] [1].) In any event, it is well settled that “[c]ompliance with the Federal Flammable Fabrics Act and its accompanying regulations is merely some evidence of due care and does not preclude a finding of negligence.” (Mercogliano v Sears, Roebuck & Co., 303 AD2d 566 [2d Dept 2003] [citations omitted]; Feiner v Calvin Klein, Ltd., 157 AD2d 501 [1st Dept 1990] [same].)
It is accordingly hereby ordered that plaintiffs motion is granted to the following extent: The jury verdict, rendered on December 16, 2009, is vacated and set aside, and a new trial is ordered.

. Determination of this motion does not involve an assessment of the credibility of defendants’ expert. The court notes parenthetically, however, that Dr. Abraham was repeatedly evasive and adversarial. He refused, to a degree largely unparalleled in the court’s experience, to respond directly to questions put to him by plaintiffs counsel on cross-examination.

. This summary of the testimony is based on the court’s best recollection, as a full trial transcript was not appended to the motion.

. To the extent that the court overruled plaintiffs counsel’s objections to Dr. Abraham’s testimony at the time of trial, the court finds, based on review of the transcript provided on this motion and consideration of Dr. Abraham’s testimony in light of the evidence as a whole, that Dr. Abraham’s opinion lacked the requisite evidentiary foundation.