Carni, J.
(dissenting). I respectfully dissent. Initially, in order to prevail on a motion for summary judgment in a premises liability case, a defendant is “ ‘required to establish as a matter of law that [it] maintained the property in question in a reasonably safe condition and that [it] neither created the allegedly dangerous condition existing thereon nor had actual or constructive notice thereof ” (Mokszki v Pratt, 13 AD3d 709, 710 [2004]; see Richardson v Rotterdam Sq. Mall, 289 AD2d 679, 679 [2001]). I conclude that defendants met that burden on their motion for summary judgment dismissing the complaint, and that plaintiff failed to raise a triable issue of fact (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Plaintiff alleges that she was injured when someone closed a trap door on her head as she was ascending a stairway from the basement in the premises. The trap door had been in the same structural condition and configuration since 1981. In support of their motion, defendants established that the trap door opening was protected on two sides with a steel tubular railing 1.5 inches in diameter that was installed approximately nine *1344 years before the accident. A third side adjoined a wall such that no foot traffic in the premises could possibly encounter the opening or the opened trap door from that direction. When the trap door, which weighed approximately 50 to 75 pounds, was opened, it leaned against the steel railing. Defendants submitted the deposition testimony of plaintiff, who was employed by the business at the premises three days per week for four years prior to the accident. Plaintiff testified that she opened and closed the trap door between five and six times each day that she worked at the premises. Moreover, plaintiff never observed or was otherwise aware of any occasion when the trap door closed on its own without deliberate human effort. On the day of the accident, plaintiff made at least three prior trips to the basement through the trap door — all without incident. Plaintiff testified that she had never had any trouble with the door and never made, heard, or received any complaints about the operation of the trap door. On her last trip to the basement, plaintiff began to ascend the stairs after retrieving some frozen food packages, and she alleges that the trap door came down and struck her in the head. When asked at her deposition if she knew how the door came down, plaintiff testified: “Lisa put it down. I was told and she apologized. She said she didn’t see me going back down.” Defendants also submitted the deposition testimony of Robert Szpilewski (Robert), the owner of the business that occupied the premises, who testified that he had operated the business on the premises for 14 years and had operated the trap door “thousands of times” before the accident. Robert testified that it is “close to impossible” for a person to drop the trap door, and that it is “[not] possible to be able to put [the] door down and not see somebody coming up those stairs.” Robert testified that, when closing the trap door, a person has to “stand at the top of the stairs to the left of the rail so you’re facing down into the stairwell.” Robert never received any complaints about the trap door prior to this incident. According to Robert, and the co-owner of the business, Steven Szpilewski, during the 14-year operation of the business, the trap door has only been closed purposefully, and there has been no prior incident where a person was struck by the trap door. Robert testified that, on the day in question, he was the person who closed the door without knowing that plaintiff was still in the basement, and that plaintiff was not at the bottom of the stairs when he did so. Although plaintiff alleges that Robert’s wife, Lisa Szpilewski, closed the door, Robert confirmed that he was the person who closed the trap door before plaintiff’s incident. In either case, the evidence is undisputed that the trap door was not inadvertently bumped *1345 or accidently caused to close. It was intentionally closed under either version.
In summary, defendants established that the trap door had existed in its date-of-accident condition for at least 14 years; it had been operated thousands of times before the accident without incident or complaint; it is not possible to close the door without having a clear line of sight to the stairway below; it was closed intentionally on the day of the accident and was not and could not be accidently or inadvertently bumped closed. In my view, that evidence was sufficient to satisfy defendants’ initial burden on their motion for summary judgment dismissing the complaint to establish that the premises were maintained in a reasonably safe condition and that the trap door was not dangerous or defective (see Fallon v Duffy, 95 AD3d 1416, 1416-1417 [2012]; Lezama v 34-15 Parsons Blvd, LLC, 16 AD3d 560, 560-561 [2005]; Hunter v Riverview Towers, 5 AD3d 249, 249 [2004]; Aquila v Nathan’s Famous, 284 AD2d 287, 287-288 [2001]; Maldonado v Su Jong Lee, 278 AD2d 206, 206-207 [2000]).
In opposition, plaintiff submitted the affidavit of an engineer who did not visit the premises to operate and inspect the trap door and the stairway (see Hoffman v Brown, 109 AD3d 791, 792 [2013]). Additionally, inasmuch as there is no evidence that the trap door was closed because it was accidentally “bumped,” the engineer’s opinion concerning the absence of a means to prevent such an accidental occurrence is irrevelant and without factual foundation. With respect to the actual situation at hand, the engineer opined that a “latch or mechanism to keep the door open would provide a moment of pause for the person closing the door to see if somebody was coming up the stairs before closing the door.” Inasmuch as plaintiff’s expert did not actually operate or test the trap door, his assumption that there is no “moment of pause” in its existing operation is without foundation. Plaintiff’s expert also did not identify any engineering or design standards in support of his opinions and cited no building code provisions (see Lezama, 16 AD3d at 561; Maldonado, 278 AD2d at 207). More importantly, plaintiff’s expert did not identify any specific “latch or mechanism” that was commercially available, feasible to install, and capable of creating the “moment of pause” he claimed was lacking (see generally McKeon v Sears, Roebuck & Co., 242 AD2d 503, 503-504 [1997]). Therefore, in my view, the opinions of plaintiff’s engineer were “unencumbered by any trace of facts or data [and thus] should be given no probative force whatsoever” (Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533-534, n 2 *1346 [1991]; see also Ramirez v Sears, Roebuck & Co., 286 AD2d 428, 430 [2001]).
Turning to the issue of constructive notice, I note that it is well established that, “[t]o constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant! ] ... to discover and remedy it” (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]). Here, defendants established that the trap door had been operated on a daily basis and opened and closed “thousands of times” over 14 years without injury or complaint. Thus, in my view, defendants also met their burden with respect to the lack of actual or constructive notice and shifted the burden to plaintiff to raise a triable issue of fact (see Anderson v Justice, 96 AD3d 1446, 1447-1448 [2012]; Fallon, 95 AD3d at 1416-1417). For the same reasons discussed above, the affidavit of plaintiff’s engineer was also woefully inadequate to raise an issue of fact with respect to notice.
Therefore, I would reverse the order, grant defendants’ motion, and dismiss the complaint.
Present — Whalen, P.J., Smith, Carni, NeMoyer and Curran, JJ.