■ TAMI L. HOUGH, Appellant, et al., Claimants, v STATE OF NEW YORK, Respondent. [610 NYS2d 659] —Weiss, J. Appeal from a judgment in favor of the State, entered August 28, 1992, upon a decision of the Court of Claims (Lyons, J.).

On April 27, 1987, an accident occurred on State Route 9H at its intersection with County Route 29 and a town road known as Stone Mill Road in the Town of Claverack, Columbia County. Route 9H ran generally north and south curving easterly and Route 29 and Stone Mill Road both merged into Route 9H from the west at opposing oblique angles, forming an extended letter "K" at the intersection. Claimant Tami L. Hough (hereinafter claimant) was operating an automobile leased by Reginald Hough from Key Capital Corporation in a northerly direction on Route 9H and stopped in the northbound of its two lanes while preparing to make a left hand turn onto Route 29. Hough was in the front passenger seat and five children were in the rear seat. Claimant's car was struck from behind by a northbound tractor trailer owned by James Collingwood and operated by James Hicks, causing the car to overturn and come to rest in the southbound lane of Route 9H. A truck owned by Otego Fuel Services, Inc. and being operated by Dale Bullis in the southbound lane of Route 9H then struck claimant's car and four of the children who had been ejected, killing two and grievously injuring two others. Claims were filed by claimant and on behalf of the infant children against the State for the personal injuries and wrongful deaths, alleging that the State was negligent in the design, construction and maintenance of the intersection. Following a trial, the Court of Claims ultimately found that the State was not negligent and granted judgment dismissing the claims.* This appeal by claimant ensued.

We begin our review with a recognition of the well-established rule that a municipality owes to the traveling public an absolute duty to keep its highways in a reasonably safe

---

* We note from a previous appeal by claimant that at least three other lawsuits emanating from this accident were commenced against, among others, the owners of the two trucks and their drivers, the County of Columbia and the Town of Claverack.

condition *(see, Friedman v State of New York,* 67 NY2d 271, 283; *Weiss v Fote,* 7 NY2d 579, 584; *Carroll v State of New York,* 157 AD2d 697, 698). And, while it is true that the State has a duty to maintain its highways in a reasonably safe condition for those who travel upon them *(Chalk v State of New York,* 147 AD2d 810, 811), it must be remembered that "the State is not the insurer of the safety of its roads and [that] no liability will attach unless the ascribed negligence of the State in maintaining its roads in a reasonable condition is the proximate cause of the accident" *(Hearn v State of New York,* 157 AD2d 883, 885, *lv denied* 75 NY2d 710). However, it has been equally well established that in the field of traffic design engineering, the State (and its municipalities) is accorded a qualified immunity from liability arising out of a highway planning decision *(Friedman v State of New York, supra,* at 283; *Alexander v Eldred,* 63 NY2d 460, 465-466; *Weiss v Fote, supra,* at 585-586). "Under this doctrine of qualified immunity, a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan" *(Friedman v State of New York, supra,* at 284 [citation omitted]; *see, Alexander v Eldred, supra,* at 466).

The recognition and application of these rules come into play in the instant case for it is claimant's principal argument that even though the State knew the intersection was dangerous, and in fact was requested to construct a left turn lane on Route 9H at the intersection, it failed to do so in the belief that it was not cost justified. Route 9H was originally constructed in 1931, had been inspected by the State in 1981 and 1982 at the request of the Columbia County traffic safety board, and was resurfaced in 1982 as a "fast track project" which does not alter highway geometry, lane widths or shoulder widths.

Central to claimant's contention is the failure of the State to construct a left turn lane at the intersection. William Fitzpatrick, the assistant regional traffic engineer for the Department of Transportation, was initially called as a witness by claimant and subsequently by the State. He testified that to evaluate the feasibility of a left turn lane, a cost benefit analysis was performed which included a three-year history of all accidents at the intersection and the specific circumstances of each accident in order to detect a pattern of similar types of accidents, with a view toward changes in the highway to mitigate such a pattern of accidents. He reviewed the geometry of the road, surrounding lands, existing traffic

signs and roadway markings, traffic volume, sight distances, stopping sight distances, vehicle speeds and other factors. His study included reference to and utilization of Manuals for Uniform Traffic Control Devices, the Institute of Transport Engineers Handbook and publications of the American Association of State Highway & Transportation Officials.

Recommendations and proposals were made to the County and the Town, some of which were adopted. Fitzpatrick testified that construction of a left turn lane would require financial participation by the County and Town with the State and that his study did not disclose any factors which would warrant any changes for northbound approaching vehicles on Route 9H. He found the road configuration suitable for northbound traffic on Route 9H. The cost benefit analysis demonstrated that construction of a left turn lane would have been a major expenditure and required a showing that sufficient number of accidents occurred at the specific location which would have been prevented by such an improvement. His recommendations included channeling Route 9H traffic, changes in certain signs, making Stone Mill Road one way southbound, and construction of a "T" intersection where Routes 29 and 9H meet. Only the proposed sign changes were adopted.

From the foregoing, it is apparent that the decision not to construct a left turn lane was not arbitrary or unreasonable *(see, Weiss v Fote,* 7 NY2d 579, *supra).* Claimant failed to prove that the State either had, or should have been, put on notice that accidents of the same nature had previously occurred at this intersection. We find that the study of the feasibility of building a left turn lane was thorough, reasonable and appropriate, and that the impact of fiscal considerations on the decision not to build were properly a part of the ultimate decision *(see, Trautman v State of New York,* 179 AD2d 635, 636, *lv denied* 79 NY2d 758).

Nor do we find persuasive claimant's contention that an unjustified delay in the formation of a remedial plan for the intersection cast the State in liability. The record shows that all aspects of the intersection were carefully studied, some proposals made and implemented, while others such as the left turn lane were considered but not adopted. The cases urged by claimant as controlling, particularly *Friedman v State of New York* (67 NY2d 271, *supra),* are distinguishable and inapposite. It was incumbent upon claimant to establish not only the number of prior accidents at the subject location, but also to produce evidence that the prior accidents were of a

similar nature to the accident giving rise to this lawsuit. In addition, the burden upon claimant required her to prove that prior accidents of a similar nature were caused by the same or similar contributing factors which caused the instant accident *(see, Whiter v State of New York,* 148 AD2d 825, 826, *lv denied* 74 NY2d 613; *see also, Kaplan v City of New York,* 10 AD2d 319, 321-322). Claimant failed to sustain this burden and in fact, Fitzgerald's testimony showed that the records did not reflect prior accidents at this location. Moreover, the contention that the failure to widen the highway during resurfacing in 1982 resulted in the State's liability for the instant action is without merit. So long as the road was safe when built, the State was not required to rebuild the road absent proof that it subsequently became unsafe for use *(see, e.g., Kaufman v State of New York,* 27 AD2d 587). Accordingly, the Court of Claims correctly found that claimant had failed to prove the existence of a dangerous condition or a material departure from the applicable safety standards in the Manual of Uniform Traffic Control Devices.

Cardona, P. J., Mercure, White and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.