(July 14, 1994)

■ HOWARD B. SHERMAN, as Executor of WALTER RASBY, Deceased, Respondent, v CITY OF NEW YORK, Appellant, et al., Defendants. [614 NYS2d 412] —Judgment, Supreme Court, Bronx County (Douglas McKeon, J.), entered September 17, 1992, effective nunc pro tunc as of May 20, 1992 upon a jury verdict in favor of plaintiff, *inter alia,* apportioning liability 70% as against defendant City of New York and 30% as against defendants RAD Oil Transport Corp. and Charles Smith, and which reduced the award for future pain and suffering from $13,000,000 to $3,700,000 and the award for past pain and suffering from $3,000,000 to $1,100,000 upon plaintiff's stipulation in lieu of a new trial on damages, unanimously reversed, on the law, without costs, and the complaint is dismissed as against the City of New York. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing and severing the complaint as against it.

On September 7, 1988 at approximately 5:30 P.M., when weather conditions were clear, dry and sunny, plaintiff's decedent's automobile collided with a truck driven by an employee of the defendant RAD Oil Transport Corp. at the intersection of East 137th Street and Willow Avenue in the Bronx. Dece-

dent was driving west on East 137th Street at a speed of approximately 20 miles per hour. A stop sign ordinarily in place at the northeast corner of East 137th Street at the intersection of Willow Avenue, which would have controlled the progress of decedent's car, had been knocked down by a sanitation truck three weeks before the accident, and it had not been replaced.

Decedent was unfamiliar with the intersection and was unaware that there had been a stop sign at the corner. He slowed to 10 or 15 miles per hour as he approached the intersection, looked to his right, and saw the RAD Oil truck heading south five or six car lengths from the intersection. Instead of coming to a stop, or further decelerating, decedent testified that he *accelerated* his car to 20 miles per hour and proceeded into the intersection, while looking straight ahead and discontinuing his observation of the truck because "[t]hat truck was so far back and I didn't think there was any problem with it." Clearly, this was a gross miscalculation, because decedent's car struck the RAD truck approximately at midsection, behind the driver's cab. We note in this regard that decedent had lost all vision in his left eye nine years before the accident, apparently as a result of his suffering from diabetes for many years, and thus he did not have three-dimensional depth perception.

There was testimony at trial from an eyewitness that the RAD truck was traveling between 40 and 50 miles per hour on Willow Avenue at the time of the collision, apparently in excess of the speed limit. RAD and its driver Charles Smith settled with decedent for $3 million prior to summations. The jury returned a verdict in the amount of $20,658,599.38 in decedent's favor finding that negligence by the City and RAD's driver had proximately caused decedent's injuries, and apportioning liability 70% to the City and 30% to RAD and its driver. The jury found decedent completely free of negligence.

The City moved to dismiss the action, or alternatively to set aside the verdict as excessive and against the weight of the evidence. On March 19, 1992, the trial court granted the City's motion only to the extent of ordering a new trial on damages unless plaintiff consented to a reduction of the awards for past pain and suffering from $3,000,000 to $1,100,000, and future pain and suffering from $13,000,000 to $3,700,000, thereby producing a total reduced award of $9,534,855.70. Plaintiff's decedent died on May 25, 1992, two months after issuance of the court's order conditionally reduc-

ing damages. The reduced award was incorporated into a judgment against the City entered on September 17, 1992, but made effective, nunc pro tunc, to May 20, 1992, five days before decedent's death.

We hold that upon the undisputed facts the City was not responsible for the accident as a matter of law. There is no evidence in the record that the intersection was inherently dangerous because of potential confusion as to which driver had the right of way, or because of a curvature in the roadway of Willow Avenue, or because the decedent's view of traffic on Willow Avenue was otherwise obstructed (see, Thompson v City of New York, 78 NY2d 682, 685; compare, Nowlin v City of New York, 81 NY2d 81, 86, 88; Eastman v State of New York, 303 NY 691; Gurevitch v State of New York, 284 App Div 717, 719, affd 309 NY 711; Robinson v State of New York, 38 Misc 2d 229, 232-233, affd 19 AD2d 946). The only proximate or concurring causes of the accident were, as a matter of law, the excessive speed of the RAD truck and decedent's misjudgment of when the truck would reach the intersection (see, Tomassi v Town of Union, 46 NY2d 91, 98). The City cannot be held responsible for the decedent's accelerating his vehicle into the side of the truck after he had seen the potential hazard and misjudged it (see, Cimino v City of New York, 54 AD2d 843, 844, affd 43 NY2d 966).

If we were not reversing the judgment as a matter of law, we would nevertheless have reversed on the facts and ordered a new trial on the ground that the jury's verdict completely exonerating the decedent of negligence was against the weight of the evidence. As noted above, the decedent slowed at the intersection and saw the RAD truck heading in his direction, but instead of giving way to the truck approaching from his right as required by Vehicle and Traffic Law § 1140 (b), he accelerated into the intersection and struck the RAD truck approximately at midsection.

Vehicle and Traffic Law § 1140 (b) provides: "When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right." The trial court further explained: "If the two vehicles are so near the intersecting point that there is a chance of collision if both keep on at their respective speeds, then the vehicle approaching from the left must slow down to a stop to permit the vehicle approaching from the right to proceed." The evidence clearly established that decedent disregarded this statutory command, which "constituted negligence in and of

itself, and could not be disregarded by the jury" *(Goode v Meyn,* 165 AD2d 436, 438; *see, Hernandez v Joseph,* 143 AD2d 632).

In addition, the trial court's refusal to charge the jury pursuant to PJI 2:22 (Supp) that "[a] person laboring under a physical disability must use caution commensurate with the increased hazard caused by such disability" was error under the circumstances surrounding the accident. There is no dispute that decedent was blind in his left eye at the time of the accident, and undisputed medical testimony established that a person who sees with one eye does not have three-dimensional perception. Given that decedent saw the RAD truck heading in his direction and obviously misjudged its distance or speed, the City was prejudiced by the court's failure to instruct the jury that decedent had the responsibility to exercise caution to compensate for any increased hazard occasioned by his known disability *(see, Hosmer v Distler,* 150 AD2d 974, 975).

In light of our conclusion that the judgment must be reversed and the complaint dismissed as against the City of New York, we need not address the City's arguments that the trial court abused its discretion in refusing to permit testimony of a seat belt expert, that the award of damages was excessive, and that the trial court improperly permitted the judgment entered against the City on September 17, 1992 to be effective nunc pro tunc as of May 20, 1992, five days before plaintiff's decedent's death. Concur—Murphy, P. J., Sullivan, Carro, Wallach and Asch, JJ.