[810 NYS2d 147]

CHUNHYE KANG-KIM, Also Known as CHUNHYE KANG HIGASA, as Guardian ad Litem of EUN HYE KANG, Respondent, v CITY OF NEW YORK, Appellant, et al., Defendants.

First Department, February 23, 2006

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Norman Corenthal* and *Kristin M. Helmers* of counsel), for appellant.

*Shaw, Licitra, Gulotta, Esernio & Schwartz, P.C.*, Garden City (*Frank J. Livoti* and *Roberta L. Clark* of counsel), for respondent.

## OPINION OF THE COURT

Andrias, J.

Because plaintiff failed to make out a prima facie case that the City of New York was negligent for failing to install barriers or a higher curb at the scene of the accident, we reverse and vacate the judgment and dismiss the complaint against the City.

It is undisputed that at about 10:30 P.M. on January 13, 1994, despite signs and traffic lights indicating that all traffic must turn right, a drunken driver heading east on East 16th Street drove his van through a red light at the intersection of East 16th Street and Union Square West, realized his mistake in not turning right, stepped on his brakes and slid on snow and ice across the roadway, through a zebra-striped pedestrian safety zone approximately 30 feet wide, striking two pedestrians who were walking north, one of whom is plaintiff's ward. The van ended up on the sidewalk adjacent to Union Square Park before the driver backed up and fled the scene. There was conflicting testimony as to whether the pedestrians were on the sidewalk or in a parking area in the roadway when they were struck, but all witnesses agreed that the injured pedestrians were left lying on the sidewalk just south of the pedestrian entrance to the park after the van backed up and fled. The curb in the area appeared to be between two and four inches high and was said to be intended to provide access for emergency and Parks Department vehicles.

Plaintiff's theory at trial, which was solely based upon the opinion of her traffic control expert, was that, because of poorly placed traffic control devices, the intersection presented an unreasonable hazard to pedestrians on the opposite sidewalk adjacent to Union Square Park where there was a pedestrian

entrance to the park flanked by two nearby subway entrances, and that the City was negligent in failing to erect barriers or a curb of appropriate height to protect pedestrians and bicyclists.

At the close of plaintiff's case, the City's motion to dismiss for failure to prove a prima facie case was denied and the trial proceeded to verdict. The jury found the City not negligent in its placement of traffic lights and signs at the intersection, but found it negligent for failing to place "barricades" or construct a "higher curb" at the sidewalk in front of the park entrance and opposite to the intersection. It also found that such failure was a substantial factor in causing the accident and apportioned liability 70% against the driver of the car and 30% against the City. The City then renewed its trial motion in its motion for judgment notwithstanding the verdict, which motion was also denied.

"In order to set forth a prima facie case of negligence, the plaintiff's evidence must establish (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) that such breach was a substantial cause of the resulting injury" (*Merino v New York City Tr. Auth.*, 218 AD2d 451, 457 [1996], *affd* 89 NY2d 824 [1996]).

The City has a nondelegable duty to adequately design, construct and maintain its roadways in a reasonably safe condition (*see Friedman v State of New York,* 67 NY2d 271, 283 [1986]). Once it is made aware of a dangerous traffic condition, it must undertake reasonable study thereof with an eye toward alleviating the danger (*id.* at 284). However, "any public roadway, no matter how careful its design and construction, can be made safer" and a municipality is not an insurer of the safety of its roadways (*Tomassi v Town of Union*, 46 NY2d 91, 97 [1978]). If the road was safe when built, the City is not required to rebuild the road absent proof that it subsequently became unsafe for use (*Hough v State of New York*, 203 AD2d 736, 739 [1994]). As long as a highway or street may be said to be reasonably safe for people who obey the rules of the road, the duty imposed on the City is satisfied (*see Tomassi, supra*).

As pertinent to this appeal, the City's traffic control expert Brian O'Rourke, the Director of Traffic Engineering for the City of Yonkers, was called as a witness out of turn during the presentation of plaintiff's case. He testified that, in the absence of any history of accidents associated with pedestrians at the low speed urban location in question, a barricade was not called for. He further testified that a barrier curb is a curb that is gen-

erally about eight inches high and is used to provide a separation between a roadway and the sidewalk; it forms a gutter to facilitate drainage of water from the crowned surface of a roadway to a catch basin and is not intended as a pedestrian safety device.

Plaintiff's expert, Mr. Newhouse, testified that, given the heavy pedestrian volume in the area, a properly designed intersection should have included adequate pedestrian protection. It was his opinion that, with regard to the absence of barriers, the City departed from good and accepted traffic engineering practices if it did not conduct a traffic safety study and did not place barriers at the location and, assuming the van was traveling 5 to 10 miles an hour when it hit the curb, he thought that if the curb had been the typical eight-inch height, "it might have helped to prevent or divert the vehicle from hitting the pedestrian." He also stated that a barricade at the location would have prevented the accident.

Such opinion as to causation, however, was of no moment. The initial and dispositive issue to be decided by the court was whether the City had a duty to erect a barricade or higher curb at the intersection. Only if such a duty had been established would it have been necessary to reach the question of whether the height of the curb or the absence of barriers at the location had proximately caused plaintiff's ward's injuries (*Singh v Kolcaj Realty Corp.*, 283 AD2d 350, 351 [2001]). Expert testimony is not properly utilized, as it was here, to supplant the judicial function (*id.*). Moreover, "something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public" (*Weiss v Fote*, 7 NY2d 579, 588 [1960]).

The testimony of plaintiff's expert regarding the need for barriers, at what plaintiff describes as "a truly unique intersection within the City," failed to prove that the City either had notice, or should have been put on notice that accidents of the same nature had previously occurred at this intersection.

"It was incumbent upon [plaintiff] to establish not only the number of prior accidents at the subject location, but also to produce evidence that the prior accidents were of a similar nature to the accident giving rise to this lawsuit. In addition, the burden upon [plaintiff] required her to prove that prior accidents of a similar nature were caused by the same

or similar contributing factors which caused the instant accident" (*Hough v State of New York,* 203 AD2d at 738-739).

Plaintiff's expert failed to give any basis for his opinion, other than his speculative conclusion that the number of prior accidents over a two-year period—none of which involved a vehicle hitting a pedestrian or bicyclist on the sidewalk adjoining the park or anywhere near the sidewalk, which was separated from vehicular lanes by a zebra-striped safety zone—indicated "confusion when you are approaching the intersection." Nor did he offer any authority for his opinion that, because of very heavy vehicular traffic and very heavy pedestrian traffic in the area, a barrier or higher curb should have been put at the entranceway to Union Square Park to protect pedestrians and bicyclists. The bulk of his testimony was devoted to the inadequacy of traffic control devices at the intersection, a theory that was rejected by the jury, and, in his remaining testimony, he failed to cite any authority, treatise or other corroborating evidence to support his opinion, nor did he state that the absence of barriers at the site violated any codes, rules, regulations or industry standards (*see Buchholz v Trump 767 Fifth Ave., LLC,* 5 NY3d 1, 8-9 [2005]). His conclusory opinion, therefore, was without probative value (*see Bean v Ruppert Towers Hous. Co.,* 274 AD2d 305, 308 [2000]). In addition, he offered no scientific basis for his conclusion that a vehicle traveling 5 to 10 miles per hour would not have mounted the sidewalk if the curb had been eight inches high.

Not only did plaintiff's expert fail to point to any standard requiring barriers at the scene of the accident, but he also failed to testify that the design of the T-intersection in issue was faulty. Plaintiff's attribution of uniqueness to the intersection flies in the face of reason given the hundreds, if not thousands, of T-intersections in the City of New York, including one right outside this courthouse where East 25th Street ends in a T-intersection at a pedestrian entrance to Madison Square Park and all traffic must turn right on Madison Avenue.

This case differs from those cases relied upon by plaintiff in which a failure by the State or municipality to install guard rails or barriers was found to constitute negligence. In all of those cases the need for such safety devices was necessitated by a known dangerous condition or a prior history of accidents at the site. For example, in *McDonald v State of New York* (307 AD2d 687, 689 [2003]), where a driver applied his brakes as he

approached a stop sign but, because the road was covered with black ice, his car slid across the T-intersection through a hole in the guide rail caused by a prior accident and down a steep embankment where it collided with a large tree near the bank of a stream, the Third Department found that since there was a known dangerous condition opposite the T-intersection, it was negligence not to have erected a guide rail or barriers sufficient to hold an automobile traveling at a reasonable rate. Here, on the other hand, there is no evidence that there was even one prior accident where a vehicle proceeded through the intersection of East 16th Street and Union Square West and crossed the curb onto the sidewalk.

There is simply no evidence that the intersection was dangerous because of potential confusion, a conclusion reinforced by an examination of the photographic exhibits, and the only proximate cause of plaintiff's ward's injuries was, as a matter of law, the drunken driver's failure to stop for a red light and turn right as the numerous traffic control devices at the intersection directed (cf. *Sherman v City of New York*, 206 AD2d 272, 274 [1994], *lv denied* 85 NY2d 802 [1995]). The sidewalk's distance from the vehicular lanes of Union Square West, the roadway's more than ample width and the abutting zebra-striped safety zone, as well as the traffic controls at the intersection establish that travel beyond the limits of the roadway was "neither contemplated nor foreseeable" (*Tomassi*, 46 NY2d at 97 [1978]). There was no causal connection between the absence of barriers or the height of the curb and the negligent operation of the automobile, which was the sole legal cause of the accident (*see Weber v City of New York*, 24 AD2d 618, 619 [1965], *affd* 17 NY2d 790 [1966]).

Accordingly, the judgment of the Supreme Court, New York County (Saralee Evans, J.), entered September 27, 2004, upon a jury verdict finding, to the extent appealed from as limited by the briefs, the City of New York 30% liable for plaintiff's ward's injuries, and bringing up for review the trial court's order, entered on or about January 9, 2004, denying the City's motion to dismiss the complaint at the close of plaintiff's case, which was renewed in its posttrial motion for judgment n.o.v, should be reversed, on the law, without costs, the City's motion granted, the judgment against it vacated and the complaint as against the City of New York dismissed. The Clerk is directed to enter an amended judgment accordingly.

MAZZARELLI, J. (concurring). I agree with the majority's result.

However, I write separately because I would decide this case upon a strict application of the law to the uncontested facts. Further, I see no purpose in the majority's disparagement of the expert testimony, the admission of which was not an improvident exercise of the trial court's discretion (*see Selkowitz v County of Nassau*, 45 NY2d 97, 101-102 [1978]).

In my view it is decisive that there was no evidence in the trial record that "due care was not exercised in the preparation of the design" of the subject intersection (*Weiss v Fote*, 7 NY2d 579, 586 [1960]). In addition, there was no evidence of a history of similar accidents which would have put the City of New York on notice of a hazardous condition which required corrective action (*Friedman v State of New York*, 67 NY2d 271, 284 [1986]). Rather, this accident was the result of the recklessness of an intoxicated driver who ignored multiple warnings to turn right at a T-intersection. He disregarded a red light and proceeded straight into a zebra-striped pedestrian safety zone. Upon realizing his predicament, he attempted to brake on ice-covered pavement, losing control of his car, sliding across a parking area and injuring plaintiff's ward.

In *Tomassi v Town of Union* (46 NY2d 91 [1978]), the Court of Appeals reviewed whether a municipality could be held liable for injuries caused when one of two vehicles involved in a head-on collision was forced into a ditch adjacent to the roadway (at 97). The Court held that the Town was not liable, and that "so long as a highway may be said to be reasonably safe for people who obey the rules of the road, the duty imposed upon the municipality is satisfied" (*id.*). The Court in that case concluded that the accident was caused by the failure of both drivers to obey the rules of the road. Here too, the accident was attributable to driver fault, not road design.

A municipality has a continuing duty to review the operation of traffic conditions, and once made aware of a hazardous condition, to study the roadway "with an eye toward alleviating [ ] danger" (*Friedman*, 67 NY2d at 284). Here, one of plaintiff's experts testified there were a number of accidents at the subject intersection in the 27 months preceding this incident. While one of those accidents involved an automobile proceeding straight though the T-intersection, it was in no other way similar to this incident. Further, there was no testimony that the traffic conditions at the intersection would have required the City to conduct a study, with a view towards either erecting barriers around the pedestrian walkways or raising the subject curb (*see Hough v*

*State of New York*, 203 AD2d 736, 739 [1994] [no evidence of accidents of a similar nature warranting requested safety measures]; *cf. Deringer v Rossi*, 260 AD2d 305 [1999]).

Contrary to the majority, I believe that expert witnesses are necessary to a case such as this. Such cases could not be determined without the "clarif[ication of] issue[s] calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" (*De Long v County of Erie*, 60 NY2d 296, 307 [1983]). The record reveals that civil engineers and traffic safety specialists were called by both plaintiff and the City, and that these witnesses were subject to cross-examination. These experts gave their opinions as to the purposes of particular traffic devices such as curbs and barriers, roadway design, and, as relevant to the municipal duty to remedy known hazards (*Friedman, supra*), statistics about prior accidents at or near the location of this incident. The jury's verdict reveals that it accepted and rejected portions of the expert testimony, as was its province. While I agree that the jury's determination as to the City's liability was the result of a misapplication of the governing law to the uncontested facts, I find no improvident exercise of discretion with respect to the court's admission of expert testimony.

Accordingly, I concur only in the result reached by the majority.

BUCKLEY, P.J., SAXE and WILLIAMS, JJ., concur with ANDRIAS, J.; MAZZARELLI, J., concurs in a separate opinion.

Judgment, Supreme Court, New York County, entered September 27, 2004, reversed, on the law, without costs, the City's motion to dismiss the complaint as against it granted and the judgment against it vacated. The Clerk is directed to enter an amended judgment accordingly.