■ LINDA M. BROWN, as Administratrix of the Estate of WAYNE BROWN, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 108961.) LINDA M. BROWN, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 110037.) [914 NYS2d 512]—

Appeal from a judgment of the Court of Claims (Nicholas V. Midey, Jr., J.), entered August 8, 2008. The judgment dismissed the claims for personal injury and wrongful death.

It is hereby ordered that the judgment so appealed from is modified on the law by granting that part of the post-trial motion with respect to the issue of proximate cause and as modified the judgment is affirmed without costs, and the matter is remitted to the Court of Claims for a determination on the issue of proximate cause in accordance with the following memorandum: Claimant commenced these consolidated actions, individually and as administratrix of the estate of her husband (hereafter, decedent), seeking damages for her injuries and his wrongful death resulting from a right-angle motor vehicle accident in an intersection. At the time of the accident, decedent was operating a motorcycle north on State Route 350 (Route 350), near the intersection of Paddy Lane in the Town of Ontario, and claimant was a passenger on that motorcycle. The posted speed limit on Route 350 in that area was 55 miles per hour. William Friend was contemporaneously operating a pickup truck east on Paddy Lane. After stopping at the stop sign at the intersection of Paddy Lane and Route 350 (intersection), Friend looked both ways down Route 350 and then proceeded to drive his vehicle straight across Route 350 at an approximate speed of five miles per hour. Before safely reaching the other side of Route 350, Friend experienced what he described as a "ground explosion." It is undisputed that what Friend was in fact experiencing was a collision between his vehicle and decedent's motorcycle while the vehicle driven by Friend was still crossing the intersection. Friend indicated that, although he looked in both directions, he never observed decedent's motorcycle at any time prior to the collision in the intersection.

According to claimant's pleadings, the intersection "has a long history of motor vehicle accidents due to a negligent and improper design of the intersection; excessive speed limit for Route 350 relative to the topography of [that road] south of the intersection . . . ; [and] inadequate posting of signs and/or lack of signs including but not limited to flashing warning signs." Claimant further alleged that defendant had been "warned of the dangerous nature of the intersection . . . and . . . negligently failed to take any action to reduce [its] apparent dangerous nature." In its answer to each claim, defendant asserted the affirmative defense of governmental immunity (*see Weiss v Fote*,

7 NY2d 579, 588 [1960], *rearg denied* 8 NY2d 934 [1960]). Following a trial, the Court of Claims concluded that defendant was not entitled to governmental immunity pursuant to *Weiss v Fote* inasmuch as defendant abandoned its study of the intersection that began approximately four years prior to the accident.

Nevertheless, the court concluded that claimant was required to establish that defendant's "failure to complete [the] intersection safety study was a proximate cause of the accident forming the basis of [the] claim[s]." The court determined that claimant failed to meet that burden and dismissed the claims. In denying claimant's post-trial motion to set aside the decision and for a new decision pursuant to CPLR 4404 (b), the court explained that in its original decision it found that defendant "had notice of a dangerous condition and had failed to take reasonable measures to remedy that condition" and determined that defendant's failure "to implement a safety plan for [the] intersection within a reasonable period of time was not a proximate cause of the accident."

We note at the outset that, although claimant appeals from the court's "[d]ecision and [o]rder," that document is only a decision from which no appeal lies (*see Pecora v Lawrence*, 28 AD3d 1136, 1137 [2006]). We nevertheless exercise our discretion to treat the notice of appeal as valid and deem the appeal as taken from the judgment entered in these consolidated actions (*see* CPLR 5520 [c]; *Ponzi v Ponzi*, 45 AD3d 1327 [2007]; *Hughes v Nussbaumer, Clarke & Velzy*, 140 AD2d 988 [1988]). On appeal, claimant contends that the court applied an inappropriate breach of duty, negligence and proximate cause analysis. Claimant further contends that, in the undisputed absence of any *Weiss v Fote* issues, her burden at trial was limited to establishing that the intersection presented a dangerous condition of which defendant had notice and that the dangerous condition was a proximate cause of the accident, claimant's injuries and the death of decedent. We agree and conclude that, inasmuch as the court incorrectly applied elements of the *Weiss v Fote* doctrine to the negligence and proximate cause analysis after determining that defendant was not entitled to the benefits of that doctrine, the matter must be remitted to the Court of Claims for a proximate cause determination that utilizes the proper standard.

There are certain undisputed facts that guide our analysis. First, defendant abandoned any study that had been undertaken with respect to the conditions of the intersection and the speed limit for vehicles approaching the intersection while traveling on Route 350. Second, no study or plan was underway

at the time of the accident. Third, defendant did not present any evidence at trial establishing that the design and signage of the intersection on the date of the accident was the product of any prior study or plan. Therefore, inasmuch as the evidence established that the signage, configuration and sight distance of the intersection, together with their interaction with the approaching speed limit on Route 350 (*see e.g. Vega v State of New York*, 10 Misc 3d 822, 829-830 [2005], *affd* 37 AD3d 825 [2007], *lv denied* 9 NY3d 812 [2007]), were not "the product of a governmental plan or study," the doctrine of *Weiss v Fote* and all of its component parts "do[ ] not apply" to the analysis of this appeal (*Cummins v County of Onondaga*, 198 AD2d 875, 877 [1993], *affd* 84 NY2d 322 [1994]). Defendant therefore correctly concedes that it is not entitled to governmental immunity pursuant to *Weiss v Fote*.

However, notwithstanding its rejection of defendant's *Weiss v Fote* defense, the court proceeded to reintroduce elements of the *Weiss v Fote* doctrine into the analysis when it concluded that claimant's burden of proof still required claimant to establish that the "failure to complete [the] intersection safety study was a proximate cause of the accident." That was error. The appropriate inquiry was whether defendant was made aware of a dangerous condition and failed to take action to remedy it and whether the dangerous condition was the proximate cause of the accident (*see Posman v State of New York*, 117 AD2d 915, 917 [1986]).

Claimant established at trial that, prior to the accident in April 2003, the Department of Transportation (DOT) received accident history data from the State Accident Surveillance System, which indicated that at least 17 right-angle accidents involving failure to yield the right-of-way as a contributing factor occurred at the intersection between August 1996 and June 2002. In six of those accidents, the drivers reported that they stopped on Paddy Lane but did not see the oncoming vehicles on Route 350 before the accident. Defendant's traffic safety engineering expert testified that "the pattern of right-angle accidents involved . . . people coming to the stop sign on [Paddy Lane] and then entering the intersection." In a 1999 resolution, the Ontario Town Board asked the Wayne County Superintendent of Highways to request that the DOT reduce the speed limit on Route 350 from 55 miles per hour to 45 miles per hour and "review the feasability of installing a blinking caution light at the intersection." It is undisputed that, in response to that data and the resolution, defendant did not reduce the speed limit on Route 350 approaching the intersection, nor did it

change the design or signage of the intersection. Claimant's traffic engineering expert testified that a vertical curve in Route 350 south of the intersection, combined with the speed limit on Route 350 of 55 miles per hour, were relevant factors in the right-angle accident pattern and that the dangerous condition of the intersection and the pattern of accidents could have been remedied by the installation of four-way stop signs. Although defendant contends that certain incremental steps would have been attempted at the intersection prior to the installation of four-way stop signs, defendant took none of those steps. Defendant offered no evidence that the intersection was "reasonably safe" as configured or that it complied with any highway engineering standards at the time it was built or at the time of the accident. The fact that defendant failed to complete any study of the intersection belies its contention that one or more incremental steps were necessary before four-way stop signs would be installed.

It is well settled that, "[i]f the conditions were substantially the same, evidence of prior accidents is admissible: first, to show the dangerous condition . . . [that] caused the accident; and second, to prove that the [entity] responsible had notice of such conditions" (Prince, Richardson on Evidence § 4-622 [Farrell 11th ed]). "It was incumbent upon claimant to establish not only the number of prior accidents at the subject location[ ] but also to produce evidence that the prior accidents were of a similar nature to the accident [in question]. In addition, the burden upon claimant required her to prove that prior accidents of a similar nature were caused by the same or similar contributing factors [that] caused the instant accident" (*Hough v State of New York*, 203 AD2d 736, 738-739 [1994]). The evidence amply demonstrated that defendant's design of the intersection with two-way stop signs had proven inadequate in light of the accident history (*see Posman*, 117 AD2d at 917). When defendant is made aware of a dangerous highway condition and does not take steps to remedy it, defendant can be held liable for the resulting injuries (*see Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664, 673-674 [1999], *rearg denied* 93 NY2d 1042 [1999]; *Scheemaker v State of New York*, 125 AD2d 964 [1986], *affd* 70 NY2d 985 [1988] ["State's failure to post lower mandatory speed limit signs at this dangerous intersection may be deemed a proximate cause of the accident"]).

Here, based upon that evidence, we conclude the court properly determined with respect to defendant's negligence that claimant established that defendant had notice of the dangerous condition of the intersection and failed to take remedial action.

That determination correctly resolved in claimant's favor defendant's failure to maintain the highway and the intersection in a "reasonably safe" condition (*cf. Marshall v State of New York*, 252 AD2d 852, 853-854 [1998] [no evidence of prior similar accidents, and the State rebutted the claimant's inadequate sight distance theory]). Thus, we agree with claimant that the remaining issue to be determined was whether the dangerous condition of the intersection was a proximate cause of the accident.

We note that this case is unlike those cases where the issue of the applicability of the *Weiss v Fote* doctrine is at issue because the State relies upon the existence of an allegedly adequate and well-reasoned plan or study. In such cases, even though the State has a plan or study, a claimant may still overcome *Weiss v Fote* immunity by demonstrating that the State was negligent in failing to implement a remedial highway planning decision once it has been made (*see Friedman v State of New York*, 67 NY2d 271, 284 [1986]), or where "the plan either was evolved without adequate study or lacked reasonable basis" (*Weiss*, 7 NY2d at 589; *see Alexander v Eldred*, 63 NY2d 460, 466-467 [1984]). However, because defendant does not rely upon such a plan or study, this case should proceed, as the Court of Appeals made clear in *Weiss v Fote*, under the "different theory" that, "having planned the intersection, [defendant] was under a continuing duty to review its plan in the light of its actual operation and that the proof established a breach of such duty" (7 NY2d at 587). Here, as the Court of Claims found in *Eastman v State of New York* (303 NY 691 [1951], *revg* 278 App Div 1 [1951]), the evidence established that at the time of the accident and prior thereto, the intersection was an unreasonably dangerous intersection (*see id.* at 692). Thus, this case is among those where the negligence of the State or the municipality was established by the need for remedial action "necessitated by a known dangerous condition or a prior history of accidents at the site" (*Chunhye Kang-Kim v City of New York*, 29 AD3d 57, 61 [2006]).

We conclude under the circumstances of this case that the court is in the best position to determine the issue of proximate cause. We therefore modify the judgment by granting that part of the post-trial motion to set aside "the decision" with respect to the issue of proximate cause. We remit the matter to the Court of Claims for a determination on this record of whether the dangerous condition of the intersection because of the vertical curve in the line of sight looking south from Paddy Lane, combined with the speed limit of 55 miles per hour and the

absence of four-way stop signs at the intersection, "may be deemed a proximate cause of the accident" (*Scheemaker*, 125 AD2d at 965).

The conclusion to the contrary by our dissenting colleagues that, notwithstanding the inapplicability of *Weiss v Fote*, claimant was still "required to show what corrective action should have been taken by defendant and that such corrective action would have been completed before and would have prevented the accident" may be readily dispensed with. Initially, and inasmuch as the evidence established that this case rests upon the "entirely different theory" that defendant "was under a continuing duty to review its [intersection] plan in the light of its actual operation" (*Weiss*, 7 NY2d at 587), the dissent's highway planning and design implementation analysis is misplaced. Second, where claimant's case proceeds upon a "different theory" (*id.*), as it does here, the dissent's imposition upon claimant of the burden of proving what corrective action would have "prevented the accident" has been rejected (*see id.*, discussing *Eastman*, 303 NY 691). Third, *Ernest v Red Cr. Cent. School Dist.* (93 NY2d at 675), decided subsequent to *Alexander v Eldred*, upon which the dissent relies, makes clear that a claimant need only establish that the absence of safety measures "contributed to the happening of the accident by materially increasing the risk," or by " 'greatly increasing the probability of its occurrence' " (*id.*, quoting *Humphrey v State of New York*, 90 AD2d 901, 902 [1982], *affd* 60 NY2d 742 [1983]).

Finally, we note that the record demonstrates that decedent was operating the motorcycle "within the law and in accordance with common practice," and thus decedent's familiarity with the accident site does not preclude liability as a matter of law (*Scheemaker*, 125 AD2d at 965).

All concur except Centra, J.P., and Peradotto, J., who dissent and vote to affirm in the following memorandum.

Centra, J.P., and Peradotto, J. (dissenting). We respectfully dissent and would affirm the judgment dismissing the claims. Claimant was seriously injured and her husband (decedent) died when a pickup truck collided with their motorcycle at an intersection in Wayne County. The driver of the pickup truck stopped at the stop sign on Paddy Lane, but he failed to yield the right-of-way to decedent and pulled in front of and collided with the motorcycle. Decedent was operating the motorcycle on State Route 350 (Route 350), which did not have a stop sign or other traffic control device at the intersection with Paddy Lane (intersection). According to claimant, there was a history of accidents at the intersection based on, inter alia, its negligent

design and "inadequate posting of signs and/or lack of signs including but not limited to flashing warning signs."

On this appeal from a judgment following a nonjury trial, we must view the record in the light most favorable to sustain the judgment and give " 'due deference to the . . . court's determinations regarding witness credibility' " (*Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168, 170 [2005]). Further, "the decision of the . . . court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence" (*Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992] [internal quotation marks omitted], *rearg denied* 81 NY2d 835 [1993]; *see Garofalo v State of New York*, 17 AD3d 1109, 1110 [2005], *lv denied* 5 NY3d 707 [2005]; *Farace v State of New York*, 266 AD2d 870, 871 [1999]).

The Court of Claims properly concluded that defendant is not entitled to qualified immunity pursuant to *Weiss v Fote* (7 NY2d 579 [1960]). Although defendant was notified that the intersection was potentially dangerous and initiated a study in February 1999, it abandoned and never completed that study before the accident at issue in April 2003. Defendant therefore may be liable for its failure to undertake an adequate study (*see generally Friedman v State of New York*, 67 NY2d 271, 284 [1986]). We cannot agree with the majority, however, that the court erred in failing to determine whether the dangerous condition of the intersection was a proximate cause of the accident. Indeed, we agree with the court that defendant's negligence was not a proximate cause of the accident.

"One who is injured in a traffic accident can recover against [the State] if it is shown that its failure to install a traffic control or warning device was negligent under the circumstances, that [such] omission was a contributing cause of the mishap, and that there was no reasonable basis for the [State's] inaction" (*Alexander v Eldred*, 63 NY2d 460, 463-464 [1984]). In our view, claimant was required to show more than that the potentially dangerous condition of the intersection was a proximate cause of her injuries and decedent's death. Rather, she was required to show what corrective action should have been taken by defendant and that such corrective action would have been completed before and would have prevented the accident. For example, in *Alexander*, the plaintiff established that there was an inadequate study and unreasonable basis for the defendant municipality's traffic plan (*id.* at 466). At trial, the plaintiff submitted evidence that a stop sign should have been in place, and that evidence was unrefuted by the defendant municipality

(*id.* at 464-465). The Court of Appeals determined that the plaintiff presented evidence establishing that the defendant municipality failed to install the necessary stop sign without an adequate study or reasonable basis, that the driver failed to stop at the proper location and that the accident might have been avoided had a stop sign been in place (*id.* at 469).

In this case, the court rejected the opinion of claimant's expert that, had defendant completed its study, a four-way stop would necessarily have been installed at the intersection prior to the accident. The court accepted the conclusions of defendant's expert that any corrective action would have been implemented incrementally, and thus the court determined that it was pure speculation to conclude that a four-way stop—the corrective action suggested by claimant's expert—would have been in place before claimant's accident even if defendant had undertaken a timely and adequate study. The court noted that claimant's expert agreed that the actions of defendant in remedying the condition following a study would have been incremental and that a four-way stop would have been installed only if other measures proved ineffective.

The court's determination is supported by the testimony of defendant's expert that a four-way stop was not "a typical corrective action" where, as here, the majority of vehicles involved in accidents at an intersection are stopping at the posted stop signs. Indeed, that expert testified that four-way stops are "rarely used approaches to addressing accident histories." Defendant's expert further testified that, depending on the findings following a study, defendant may not have taken any corrective action and that there were already intersection warning signs in place on Route 350 and stop signs controlling traffic on Paddy Lane.

We therefore conclude that the determination of the court that defendant's negligence was not a proximate cause of the injuries sustained by claimant and decedent's death is supported by a fair interpretation of the evidence. Present—Centra, J.P., Peradotto, Carni, Lindley and Sconiers, JJ.