| **Batten v City of New York** |
| 2024 NY Slip Op 30824(U) |
| March 15, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 150038/2021 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:         **HON. HASA A. KINGO**          PART          05M
                        *Justice*

-----------------------------------------------------------------------X

WADE BATTEN, JR., AS ADMINISTRATOR OF THE
ESTATE OF JUSTIN BATTEN, DECEASED,

INDEX NO.          150038/2021

MOTION DATE          10/25/2023

MOTION SEQ. NO.          002

                                        Plaintiff,

- v -

CITY OF NEW YORK, HEMCHAN RAMBARAN,
NARAINDRA RAMBARAN, CENTRAL PARK
CONSERVANCY, INC.

**DECISION + ORDER ON
MOTION**

                                        Defendant.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76

were read on this motion to/for          SUMMARY JUDGMENT(AFTER JOINDER          .

With the instant motion, defendant City of New York ("City") and Central Park Conservancy, Inc. ("CPC")(collectively "defendants") move, pursuant to CPLR §3212, for summary judgment and an order dismissing this consolidated action and all cross-claims as against them. Defendants submit that dismissal is warranted on the grounds that the intersection at issue was a reasonably safe roadway for users who obeyed the rules of the road, and by challenging plaintiff Wade Batten Jr.'s ("plaintiff") claim that a partially obstructed pedestrian signal was a proximate cause of decedent Justin Batten's ("decedent") accident. Plaintiff and the Rambaran defendants oppose the motion.

## BACKGROUND AND ARGUMENTS

This action arises out of a motor vehicle/pedestrian accident that occurred on May 20, 2020, at the intersection of East 97th Street and 5th Avenue, Manhattan, in which a vehicle operated by defendant Hemchan Rambaran ("Rambaran") and owned by defendant Naraindra Rambaran (collectively "Rambaran defendants"), struck decedent, resulting in his death. Rambaran was traveling southbound on 5th Avenue and decedent was in the marked crosswalk jogging east to west when the accident occurred.

Detective Peter Jarvis ("Det. Jarvis") of the New York City Police Department Collision Investigation Squad ("CIS") investigated this accident and determined that Rambaran was

150038/2021   WADE BATTEN, JR., AS vs. CITY OF NEW YORK
Motion No.  002

Page 1 of 6

[* 1]

traveling at an average rate of speed of forty-six (46) mph, nearly twice the twenty-five (25) mph speed limit, when he struck decedent. Det. Jarvis also determined that Rambaran had a green light, while decedent did not have the pedestrian signal in his favor, when the accident occurred. The pedestrian signal on the northwest corner of the intersection, which was facing decedent as he waited on the northeast corner, was partially obstructed by foliage at the time of the accident. Consequently, Det. Jarvis also concluded that the partially obstructed signal was a contributing factor to the accident.

In support of the instant motion, defendants proffer that objective evidence authenticated by Det. Jarvis conclusively establishes that the intersection, including its pedestrian signals, were in a reasonably safe condition at the time of the accident. Moreover, defendants argue that any conclusion that decedent entered the crosswalk due to the partially obstructed signal requires impermissible speculation by Det. Jarvis and/or a jury, which is simply incompetent to raise an issue of fact. In opposition, plaintiff argues that contrary to defendants' contentions, there are triable issues of fact as to whether defendants were negligent in failing to properly maintain the foliage in and around the pedestrian signs, thereby partially obstructing said signs at the intersection where this accident took place, and whether that partially obstructed sign was a proximate cause of the accident at issue.

## DISCUSSION

In order to prevail on a motion for summary judgment, the proponent must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence demonstrating the absence of any material issue of fact (*see Klein v. City of New York*, 89 NY2d 883 [1996]; *Ayotte v. Gervasio*, 81 NY2d 1062 [1993]). Once the moving party has satisfied these standards, the burden shifts to the opponent to rebut that prima facie showing, by producing contrary evidence in admissible form sufficient to require a trial of material factual issues (*Amatulli v. Delhi Constr. Corp.*, 77 NY2d 525 [1999]).

Summary judgment is a drastic remedy. Therefore, the court's function on a motion for summary judgment is issue finding rather than issue determination (*Stillman v Twentieth Century Fox Film Corp.*, 3 NY2d 395 [1957]). Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue (*Rotuba Extruders v Ceppos*, 46 NY2d 223 [1978]). The burden on the movant is a heavy one, and the facts must be viewed in the light most favorable to the non-moving party (*Jacobsen v New York City Health & Hosps. Corp.*, 22 NY3d 824 [2014]).

When confronted with a summary judgment motion, it is the court's responsibility to search the record for triable issues of fact without determining the strength of either parties' case (*Cross v. Cross*, 112 AD2d 62 [1st Dept 1985]). In doing so, the court must search evidentiary facts sufficient to defeat a motion for summary judgment. The mere existence of a material issue of fact should lead to the denial of the motion (*see Downing v. Schreiver*, 176 AD2d 781 [2d Dept 1991]). It is also firmly acknowledged that matters concerning negligence seldom find facile resolution through summary judgment proceedings (*Ugarizza v. Schmieder*, 46 NY2d 471 [1979]). Indeed, the pivotal inquiry as to whether a defendant's actions constitute negligence is inherently entwined

150038/2021   WADE BATTEN, JR., AS vs. CITY OF NEW YORK
Motion No. 002

Page 2 of 6

with questions of fact that properly belong within the purview of a jury (*Rivers v. Atomic Exterminating Corp.*, 210 AD2d 134 [1st Dept 1994]).

It has been held that "to prevail on a motion for summary judgment on the issue of liability in an action alleging negligence, a [moving party] has the burden of establishing, prima facie, not only that the [other party] was negligent, but that the [moving party] was free from comparative fault, since there can be more than one proximate cause of an accident (*Ramos v. Bartis*, 112 AD3d 804 [2d Dept 2013]; *Thoma v. Ronai*, 82 NY2d 736 [1993]). It has also held that there can be more than one proximate cause of an accident, and the issue of comparative negligence is generally a question for a jury to decide (*Cox v. Weil*, 86 AD3d 620 [2d Dept 2011]; *Wilson v. Rosedom*, 82 AD3d 970 [2d Dept 2011]).

In addition, although the City must construct and maintain its roadways in a reasonably safe condition, it is not an insurer of users' safety. Therefore, no liability will attach unless the ascribed negligence in maintaining its roads is a proximate cause of the accident (*Tomassi v. Union*, 46 NY2d 91 [1978]; *Lekutanovic v. City of New York*, 44 AD3d 461 [1st Dept 2007]; *Chunhye Kang-Kim v. City of New York*, 29 AD3d 57 [1st Dept 2006]).

Here, defendants have tendered a prima facie showing in favor of their motion for summary judgment. This demonstration is founded upon the presentation of evidence, manifested through testimony and accident reports. Said evidence serves to bolster the assertion that, at the moment of the accident, the junction of 5th Avenue and East 97th Street stood as a thoroughfare reasonably safe for both motorists and pedestrians who adhere to the prescribed rules of the road.

The evidence put forth by defendants further accentuates that the traffic signals remained unobstructed and operational with the pedestrian signals. Moreover, the demarcated crosswalks and roadway delineations were duly in place. Although conceding that foliage partly obscured the pedestrian signal on the northwest corner, defendants, as illuminated by deposition transcripts, posit that the signa"'s discernibility persisted for pedestrians journeying from east to west. Of paramount importance, defendants underscore that the pedestrian signal on the southwest corner stood unobstructed, presenting an entirely visible cue for individuals such as decedent, who traversed from the diagonal corner in an eastward to westward trajectory. In accordance with the proofs submitted, defendants have set forth a prima facie showing entitling them to judgment in their favor.

However, in opposition to defendants' prima facie showing, plaintiff and the Rambaran defendants have raised triable issues of fact warranting a trial. These issues orbit around the question of whether defendants, through negligence, failed in their duty to adequately maintain the foliage surrounding the pedestrian signs. This purported neglect resulted in the partial obstruction of said signs at the very intersection where the accident unfolded. Moreover, triable issues of fact are raised as to whether this partially obstructed sign acted as a proximate cause for the accident.

Contrary to defendants' assertions, the issues raised by plaintiff and the Rambaran defendants are not predicated on mere conjecture, but rather are supported by admissible evidence cited in plaintiff's opposition to defendants' motion. To be sure, Det. Jarvis investigated the May 20, 2020 accident and came to conclusions regarding the happening of this accident from his

investigation. At the time of his deposition, he noted that his conclusions regarding the happening of this accident were set forth in the New York City Police Department Omniform System-Complaint. As is relevant here, Det. Jarvis testified at his deposition that based on his training and experience, his expertise in the field of highway investigation, and the thorough investigation performed by himself, as well as his team, regarding this accident, he was able to conclude that a contributing factor to the happening of the accident was the partially obstructed pedestrian signal.

Det. Jarvis went on to testify that he came to his conclusion that the partially obstructed pedestrian signal was a contributing factor in causing the accident by "reviewing the photographs and the videos that we obtained ourselves from that evening when we responded there, that's obviously something that during the course of the investigation I would have looked at numerous times, just to get a better idea myself. Each time I was looking at a new video or a new piece of information, that's something that definitely stood out as well, that there is clearly tree leaves and that branch that's obstructing the view of the signal." Det. Jarvis also testified that in his vast experience as part of the Highway Investigation Squad, and as a detective involved in the investigations of many vehicular accidents, that the pedestrian signals that pedestrians rely upon to use when crossing the streets of Manhattan are supposed to clear and free of any obstructions that would hinder the individual attempting to use them daily. Based upon this deposition testimony, it is axiomatic that triable issues of fact exist as to whether one of the contributing factors for the happening of this accident was that the pedestrian signals were partially obstructed at the time of the crash due to trees from the park.

Likewise, as highlighted by plaintiff, the City had an agreement with CPC to maintain Central Park, including pruning and removal of trees and branches within a reasonable period of time. Pursuant to this agreement, CPC's maintenance and repair responsibilities include "[p]runing and trimming of trees and shrubs that are overextended, dead or otherwise unsafe or unsightly, to maintain their natural form." The agreement between the City and CPC was produced by the City in discovery, along with a document called Parks Inspection Program ("PIP") Standards. Fabrice Rochelemagne ("Rochelemagne"), who appeared for deposition representing CPC, has been employed with CPC as a climber/pruner since December of 2015, and by the time of the incident on May 20, 2020, he was a supervisor of inspecting arborists, climbing arborists, and helped implement urban forestry management plans, among other responsibilities. He testified that inspections of trees were conducted based upon major New York City events, such as the New York City Marathon and the St. Patrick's Day Parade, and the inspection would be based on the footprint of the event. Rochelemagne agreed that when trees are in full bloom, the branches and leaves would cause those traffic signals to become blocked or obscured. Indeed, he stated at his deposition that "CPC must be aware of trees interfering with, potentially interfering with traffic signals and other traffic devices." During Rochelemagne's career at CPC from 2015-2020, he said he was aware of instances where certain trees along the perimeter of Central Park in close proximity to the traffic signals obscured those traffic signals and needed to be pruned back. He further testified that there were two ways in which CPC was alerted of a branch hiding or obscuring a traffic control signal or critical signage: (1) if a member of the public called 3-1-1; and, (2) if a staff member from CPC observed the condition and alerted a supervisor or called the tree hotline. Rochelemagne agreed that trees that obscure or hide traffic signals could pose a danger to the public, and that CPC was responsible for protecting the public from such dangers. Nevertheless, the trees along the perimeter of Central Park and along Fifth Avenue were not inspected on a more

150038/2021   WADE BATTEN, JR., AS vs. CITY OF NEW YORK          Page 4 of 6
Motion No.  002

4 of 6

frequent basis than any other trees. This concession, among others, raises triable issues of fact regarding whether defendants' actions were the proximate cause of decedent's death.

The court's function here is not to surmise whether the issues raised by plaintiff are credible. Rather, the court is constrained, where facial issues arise, to leave resolution of those issues within the province of a jury. In the case of *Scott v. City of New York*, 16 AD3d 485 (2d Dept 2005), a representative of a bicyclist who perished in a collision with a vehicle at an intersection initiated a wrongful death action against the City. The allegation was that the City demonstrated negligence by failing to install adequate traffic control devices and neglecting to trim overgrown foliage that impeded visibility at the intersection. The Supreme Court, Queens County, rejected the City's motion for summary judgment, prompting an appeal by the City.

The Appellate Division, Second Department, upheld the trial court's decision, affirming that genuine issues of material fact precluded summary judgment. In its determination, the Appellate Division, Second Department, observed that contrary to the City's contentions favoring dismissal, significant triable issues of fact existed regarding whether the foliage obstructed the roadway's visibility for pedestrians attempting to cross at the intersection and whether it also hindered the defendant's view of the decedent.

Given that an accident may have more than one proximate cause, the fact that Rambaran may have been speeding prior to entering the intersection and striking decedent who was crossing against the pedestrian light, does not negate the possibility that comparative negligence by defendants contributed to the occurrence of this accident (*Cox v. Nunez*, 23 AD3d 427 [2d Dept 2005]). Consequently, triable issues of fact persist, necessitating resolution at trial.

When considering motions for summary judgment like this, it behooves the court to acknowledge the profound ramifications such rulings hold, for they may effectively deny litigants their sacred right to a day in court, wherein their grievances are meticulously examined by a jury of their peers. As aptly expressed by Justice Oliver Wendell Holmes Jr., "The jury system is the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." In essence, the judiciary is entrusted with the solemn duty of preserving this fundamental aspect of the legal process.

While the court is vested with the authority to grant summary judgment when warranted, it is incumbent upon the court to exercise prudent discretion, particularly in cases where the scales of justice teeter amidst competing assertions. In such delicate circumstances, where genuine issues of fact are raised, the court remains steadfast in its commitment not to supplant the prerogatives rightly reserved for a jury. For, as Justice Benjamin N. Cardozo so eloquently stated, "There is in every jury a sense of justice, as well as the law, and by that sense, the law itself is carried out." Thus, in the spirit of upholding the sanctity of the judicial process, and in accordance with the law, here this court avows to tread cautiously, ensuring that plaintiff is afforded the rightful opportunity to seek redress before an impartial jury, where the full breadth of plaintiff's claims can be justly weighed and adjudicated.

Based on the foregoing, it is hereby

[* 5]

ORDERED that defendants' motion for summary judgment is denied in its entirety.

This constitutes the decision and order of the court.

| | | | |
|---|---|---|---|
| **3/15/2024** | | | |
| **DATE** | | **HASA A. KINGO, J.S.C.** | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED   ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**150038/2021   WADE BATTEN, JR., AS vs. CITY OF NEW YORK**
**Motion No.  002**

Page 6 of 6

[* 6]